UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

M.H., individually and on behalf of M.T.,

                   Plaintiff,

       -v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                 Defendant.

-------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __10/13/2021__

20-cv-1923 (LJL)

AMENDED OPINION AND
ORDER

LEWIS J. LIMAN, United States District Judge:

      Plaintiff brings this action pursuant to the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1415(i)(3), seeking attorneys' fees and equitable relief.  Pending before

the Court is Plaintiff's motion for summary judgment, seeking attorneys' fees, costs, and interest

for work performed by the Cuddy Law Firm ("CLF"), as well as equitable relief, and the cross-

motion of Defendant New York City Department of Education ("DOE") for summary judgment

on Plaintiff's claims for equitable relief.

      For the following reasons, Plaintiff's motion for summary judgment is granted in part and

denied in part and Defendant's cross motion is granted.

## BACKGROUND

      The following facts are undisputed for purposes of summary judgment except as

otherwise stated.

## I.    Relevant Parties

      M.T. is a child with a disability under IDEA, 20 U.S.C. § 1401(3)(A), and is classified

with autism.  Dkt. No. 33 ("Joint Statement" or "Undisputed Facts") ¶ 2; 31-3.  M.H. is M.T.'s

parent as defined by IDEA, § 1401(23).  Joint Statement ¶ 3.  M.H. and M.T. reside in Kings

County, New York.  Joint Statement ¶ 1.

Defendant New York City Department of Education ("DOE") is a local educational

agency as defined by IDEA, 20 U.S.C. § 1401(19).  *Id.* ¶ 6.

M.T. has an Individualized Education Program ("IEP"), *see* 20 U.S.C. § 1414(d),

mandating a state-approved nonpublic school.  She attends Brooklyn Blue Feather ("BBF"), a

state-approved nonpublic school.

## II.   The Due Process Complaint and Hearing

On April 17, 2017, M.H. initiated an impartial due process hearing (Case Number

165990), pro se, on behalf of M.T.  Joint Statement ¶¶ 12-13 (citing Dkt. Nos. 14, 15 ¶¶ 8, 9).

The request was on a form created by Defendant.  Dkt. Nos. 35 ¶ 46, 31 ¶ 31, 31-1.  M.H. sought

limited relief in the form of an outside evaluation, noting that M.T.'s last evaluation had been

three years earlier.  Dkt. No. 31-1.

After filing her initial complaint pro se, M.H. retained CLF to represent her when DOE

contacted M.H to try to resolve the case without a hearing and made threatening noises to M.H.

when she did not settle.  Dkt. No. 32-1 ¶¶ 3-4.  Nina Aasen of CLF served as lead counsel for

M.H.  Dkt. No. 31 ¶ 28.

On June 15, 2017, CLF sought to amend the due process complaint on behalf of M.H. to

allege a denial of a free appropriate public education ("FAPE"), *see* 20 U.S.C. § 1401(9), for the

2016-2017 and 2017-2018 school years.  Joint Statement ¶ 15 (citing Dkt. Nos. 14, 15 ¶ 10).  A

due process complaint can be amended either by agreement between the parties or, if at least five

days before a hearing, by the impartial hearing officer ("IHO").  *See* N.Y. Comp. Codes R. &

Regs. tit. viii § 200.5(i)(7).  Defendant denied M.H.'s request to amend the due process

complaint on or about June 20, 2017, Joint Statement ¶ 16, but on July 18, 2017, the IHO

overruled Defendant's denial and accepted the amended due process complaint. *Id.* ¶ 18 (citing Dkt. Nos. 14, 15 ¶ 12).

The amended due process complaint contained five alleged IDEA violations contributing to that claim, including the failure to recommend an appropriate program for the 2016-2017 school year, the failure to recommend an appropriate program for the 2017-2018 school year, the failure to conduct updated comprehensive evaluations, the failure to agree to the parent's request for independent evaluations, and the failure to conduct a functional behavioral assessment and develop a behavior intervention plan. Dkt. No. 31-3. It claimed, among other things, that the failure of the IEP to specify that M.T. would receive applied behavior analysis ("ABA") or discrete trial instruction and home-based ABA services, and the lack of updated comprehensive evaluations in all areas, constituted a denial of a FAPE. Although BBF offers ABA services as part of its elementary school program for children, like M.T., who have autism, it was not on M.T.'s IEP and was not recognized as one of her needs, despite recommendations in her evaluations that she receive ABA. Joint Statement ¶¶ 4, 5; Dkt. No. 32-1 ¶ 8.

The amended complaint sought the following relief: (1) a finding that M.T.'s March 16, 2016 IEP denied her a FAPE; (2) a finding that M.T.'s March 11, 2017 IEP denied her a FAPE; (3) an order directing Defendant to fund the requested independent evaluations by providers of M.H.'s choosing and at the providers' usual and customary rates; (4) an order that ABA and discrete trials be specified as methodology on M.T.'s IEP; (5) an order that ABA home-based services be added to M.T.'s IEP as part of her educational program; (6) an order reimbursing Plaintiff for expenses of providing home-based ABA services to M.T. for necessary home ABA services that the Department had failed to provide; (7) an order for additional services of home-based ABA services to M.T. to make up for ABA home-based services denied to M.T. and

to compensate for the ongoing denials of a FAPE; (8) an order directing Defendant's Committee on Special Education ("CSE") to reconvene to consider all appropriate evaluations, including independent evaluations, to develop a new IEP; (9) payment of attorneys' fees and expenses; and (10) any further relief that the IHO would deem just and proper to ensure that M.T. received a FAPE. Dkt. No. 31-3.

An impartial due process hearing for M.H. and M.T. was first scheduled for May 30, 2017. The May 30, 2017 first pre-hearing conference lasted only two minutes because the representative from DOE failed to attend, apparently because the representative did not have the code for the telephonic hearing. In the absence of the DOE representative, the IHO simply confirmed that the due process complaint would be amended. Joint Statement ¶ 14; Dkt. No. 31 ¶ 35; 31-2.

The due process hearing was ultimately held over four separate days from August 7, 2017 to April 18, 2018. Over the course of the hearings, Plaintiff introduced 59 exhibits into evidence and Defendant introduced an additional three exhibits.[1] Defendant presented two witnesses while Plaintiff presented the testimony of five witnesses, including that of M.H.

At the August 7 hearing, the parties and IHO addressed DOE's refusal to agree to pay the rates charged by the independent providers selected by M.H. for a M.T.'s evaluation[2] and Plaintiff moved its first 45 exhibits into the record. Joint Statement ¶ 20; Dkt. No. 31-4. The IHO directed that counsel for M.H. and counsel for DOE speak about the issue of rates. A second hearing was held on September 19, 2017. At the September 2017 hearing, Plaintiff

---

[1] Defendant also relied on certain of Plaintiff's exhibits.
[2] Pursuant to New York State regulations section 200.5(g) of the Regulations of the Commissioner of Education, if a Parent disagrees with an evaluation obtained by the school district, the Parent has a right to obtain an independent evaluation at public expense.

entered an additional five exhibits into evidence and Defendant put on as a witness a DOE supervisor of psychologists for DOE's CSE, who was subject to both cross-examination and re-direct examination.  Joint Statement ¶ 21; Dkt. No. 31-5.  Also, after the parties noted that the DOE did not speak to counsel about rates but contacted M.H. directly to demand that she agree to the DOE's rates, the IHO directed Plaintiff's counsel to prepare a proposed order that Plaintiff was entitled to have independent evaluations at providers' rates.  Joint Statement ¶ 21; Dkt. No. 31-5.  The third hearing was on December 19, 2017.  At that hearing, Plaintiff entered an additional six exhibits into evidence and Defendant entered its first three exhibits into evidence and presented two witnesses—the principal and school psychologist from M.T.'s school—who were subject to cross-examination, re-direct examination, and re-cross-examination.  Joint Statement ¶ 23.

The last hearing was on April 18, 2018 and lasted approximately three hours and fifty minutes.  *Id.* ¶ 24.  On October 6, 2017, the IHO had issued an Interim Order requiring Defendant to fund at M.H.'s proposed rates: (i) an independent neuropsychological evaluation; (ii) an independent speech and language evaluation; (iii) an independent occupational therapy evaluation; and (iv) an independent functional behavior assessment, all at rates specified in the order.  *Id.* ¶ 22; Dkt. No. 31-6.  At the April 18, 2018 hearing, Plaintiff entered three additional exhibits into evidence and presented her own testimony and that of four other witnesses, including the neuropsychological evaluator, the occupational therapy evaluator, and M.T.'s ABA therapist and board-certified behavior analyst ("BCBA").  *Id.*; Dkt. No. 31-9.  At the conclusion of the April 18 hearing, the IHO ordered closing briefs to be submitted within two weeks of the date when the transcript was delivered.  Dkt. No. 31-9.  M.H.'s closing brief was 20 pages long,

complete with citations to the relevant portions of the record and applicable regulations and case law.  Dkt. No. 31-10.

## III.    The Findings of Fact and Decision

On June 6, 2018, the IHO issued her initial Findings of Fact and Decision ("FOFD"). Dkt. No. 31 ¶ 72; Dkt. No. 31, Ex K.  On June 7, 2018, the IHO issued an amended FOFD.  Joint Statement ¶ 26.

In the FOFD, the IHO found that M.T. had been denied a FAPE for both school years at issue.  The IHO determined that "[p]redetermination during the March 2017 IEP meeting led to inappropriate instructional services, failure to perform a functional behavioral assessment, and inadequate related services" and that "[t]he decision not to include ABA on the Student's IEP arose from predetermination, not an assessment of the individualized needs," concluding "[p]redetermination is a denial of FAPE."  Dkt. No. 31, Ex L at 5.[3]  The IHO also concluded that M.T. "requires ABA both at school and at home" and that "occupational therapy and speech/language therapy should be increased."  Dkt. No. 31, Ex. L at 7.  The IHO thus concluded that "the Department defied the consensus of the experts and refused to offer ABA on the IEP, thus denying M.T. a FAPE."  *Id.* at 9.  The IHO also concluded that the failure to conduct a functional behavioral assessment ("FBA") and then develop a behavior intervention plan ("BIP") deprived M.T. of a FAPE.  Dkt. No. 31, Ex. L at 12.  The IHO ruled that M.T. should receive occupational theory "4x45 in a sensory gym with direct billing to the Department."  *Id.* at 14.

---

[3] Regarding predetermination, the IHO explained: "This [i.e. predetermination] means that the CSE has made its determination prior to the IEP meeting, including when it presents one placement option at the meeting and is unwilling to consider other alternatives.  In other words, an IEP team cannot determine a student's program and placement in advance of a meeting and without discussing several placement options with the Parent.  It is the Student's individual need that drives program recommendations, not the availability of special education and related services, configuration of the service delivery system, availability of space, or administrative convenience."  Dkt. No. 31, Ex. L at 5.

The amended FOFD ordered that:

(1) The CSE "shall reconvene and develop a new IEP consistent with the results of the independent evaluations that places the Student in a state-approved non-public school with appropriate goals, programming, and individual related services and present levels of performance, and ABA methodology with discrete trials specified."

(2) "Student shall receive[ ]10 hours of home- based ABA services at the provider's prevailing rate."

(3) "Student shall receive 517.5 hours of 1:1 compensatory ABA services at the provider's prevailing rate."

(4) "Parent shall receive 62 hours of parent counseling and training services ["PCAT"] at the provider's prevailing rate."

(5) "The Department shall reimburse Parent for home-based ABA in the amount of $4,592.22 with appropriate documentation within 14 days."

(6) DOE shall fund occupational therapy services ("OT") four times weekly, for forty-five minutes per session, as follows: "[t]he Department shall fund OT 4x45 in a sensory gym with Parent's chosen provider for school year 2018/19 beginning July 1, 2018." [4]

*Id.* ¶¶ 27-34.  The FOFD also included a notice that both parties had a right to obtain

review by a State Review Officer ("SRO") of the New York State Education Department.  *Id.*

¶ 35.

The amended FOFD awarded M.H. effectively everything that counsel and the

independent evaluators helped her request, including ABA of 1035 hours at a rate of $126/hour,

for a value of $130,410.00, on top of $4,592.22 in copays that Defendant was ordered to fund.

Dkt. No. 35 ¶ 48.

---

[4] The Joint Statement notes: "As agreed to between Plaintiff and Defendant on about July 26, 2018, based upon language on page 13 of the FOFD, calculating two sets of 10 weekly hours of ABA over the course of one year, the second and third items ordered by the FOFD should be interpreted as an award of 1035 hours of ABA," and "[a]s agreed to between Plaintiff and Defendant on February 1, 2019, based upon a review of the administrative record, ABA is to be direct payment to the provider."  Joint Statement ¶¶ 30, 33.

**IV.    Implementation Efforts**

The process to implement the FOFD was lengthy.  It was engaged in by CLF on behalf of

M.H. and M.T. and members of DOE's Impartial Hearing Order Implementation Unit

("IHOIU"), which is responsible for implementing impartial hearing orders on behalf of

Defendant.  Joint Statement ¶¶ 7, 36-37.

The parties initially disputed the interpretation of the FOFD's language with respect to

compensatory ABA services.  Point 2 of the amended FOFD had awarded 10 hours per week of

home-based ABA for one year (which would equate to 517.5 hours) and Point 3 of the amended

FOFD had awarded 517.5 hours of 1:1 compensatory ABA services.  IHOIU suggested that the

FOFD should be interpreted to require that the 1035 hours of ABA (517.5 x 2) would have to be

used within one year.  *Id.* ¶ 39; Dkt. No. 31-13.  M.H. disagreed.  Eventually, on July 26, the

IHOIU agreed that the 1035 hours would be used within three years of July 25, 2018.  Joint

Statement ¶¶ 40-41, 46; Dkt. No. 31 ¶¶ 84-86; Dkt. No. 41 ¶ 18; Dkt. No. 31-13.

Plaintiff elected to have the ABA provided by M.T.'s ABA providers, Attentive Mental

Health Counseling, P.C. and Attentive Behavior Care, Inc. (collectively, "Attentive Behavior"),

which had already been providing ABA services to M.T.  Dkt. No. 41 ¶¶ 12, 36-37.  Attentive

Behavior has since integrated with an entity known as Proud Moments.  Dkt. No. 41, Exs. L,

OO.  The FOFD provided that M.T. would be "reimbursed" for the services provided by

Attentive Behavior prior to the FOFD and that the services going forward by Attentive Behavior

would be paid for by the Defendant.  The process of getting Attentive Behavior paid for the

services it had provided and would provide was marked by delay and confusion on the part of

Defendant.  On July 31, 2018, Ms. Bunnell, a paralegal from CLF, emailed IHOIU with the

pre-FOFD invoice for $4,592.22 from Attentive Behavior and requesting authorization for the

ABA services as well as any additional documentation that would be needed for Attentive

Behavior to be directly reimbursed.  Joint Statement ¶ 48.  The $4,592.22 invoice was not paid by Defendant until February 2019, a delay that was accounted for only in part by the fact that the order provided for "reimbursement," while M.T. had not actually paid out of pocket for the prior services by Attentive Behavior.  Over the course of July and August 2018, both Ms. Bunnell from CLF and counsel (Nina Aasen) sent numerous emails to IHOIU inquiring about the payment.  With the exception of correspondence on August 8, 2018 inquiring whether the payment should be made directly to Attentive Behavior, CLF's emails were met with silence.  *Id.* ¶¶ 49-55.

On September 19, 2018, the managing partner of CLF, Andrew Cuddy, emailed IHOIU that the firm was "having extreme difficulty with implementation and the failure of [their] office to respond to efforts to work through implementation," and that going forward, in any case without solid evidence of implementation within sixty days of the decision, CLF would immediately sue for enforcement.  *Id.* ¶ 56.  IHOIU responded the same day, assuring CLF that it would review communications with CLF about its cases, promising to provide a status update by the following week, and inquiring whether there was "any additional information on priorities or cases [it] should focus on."  *Id.* ¶ 57.  Ms. Bunnell followed up the next day with a list of "high priority cases," including M.T.'s case with a notation: "Reimbursement of Attentive Behavior Care, IEP meeting, and all the services awarded in the decision have not been authorized."  *Id.* ¶ 58.  Still there was silence.  CLF followed up with an email on October 4, 2018 from counsel; an email on October 11, 2018 from Ms. Bunnell that noted that authorizations and information had not been received and that the matter was urgent since the decision was dated June 7, 2018; and another email from Ms. Bunnell on October 25, 2018, which asked IHOIU to advise on the status of the matter as soon as possible.  *Id.* ¶¶ 59-61.

On January 10, 2019, IHOIU indicated that the 1035 hours of ABA would be authorized the following day, but by email the same day also stated that the Unit would only reimburse the money after proof of payment, unless CLF demonstrated where precisely in the transcript direct payment was addressed.  Dkt. No. 31 ¶ 89.  On January 30, 2019, Ms. Bunnell emailed IHOIU, directing IHOIU to pages 314-316 of the transcript from the administrative hearing in reference to the reimbursement for ABA services awarded at item "5" of the FOFD, occupational therapy ("OT").  *Id.* ¶ 79; *see also* Dkt. No. 31-12 at 15 (Amended FOFD stating "The Department shall fund OT 4x45 in a sensory gym with Parent's chosen provider for school year 2018/19 beginning July 1, 2018"); Dkt. No. 31-20 (email from Nina Aasen to Sapna Kapoor stating "See pages 314-316").  On February 1, 2019, IHOIU emailed CLF that they had reviewed the transcript, and would set up Plaintiff's matter as "direct payment to the provider" and would "be in touch if he needs anything else."  Joint Statement ¶ 79; Dkt. No. 31 ¶ 90.

On February 19, 2019, Ms. Bunnell inquired with IHOIU on each item of awarded relief still at issue, including the ordered IEP hearing, payment of pre-FOFD ABA, payment of compensatory post-FOFD ABA, and occupational therapy services directed to begin on July 1, 2018 and carry on for the 2018-2019 school year.  IHOIU did not respond to that or any follow-up by CLF on Plaintiff's case until July 2, 2020.  Dkt. No. 31 ¶¶ 95-100; Dkt. No. 32, Exs. I, J, K, R.  Only then, and after M.H. had filed this lawsuit, did IHOIU send counsel a chart of claimed invoice hours and amounts and request that CLF send over unpaid invoices concerning ABA.  Dkt. No. 32 ¶ 125.

All of the invoices for ABA have now been paid by the Defendant.  Hr'g Tr. at 9.  Eight of them were paid before this litigation was instituted.

## PROCEDURAL HISTORY

M.H. filed her initial complaint on March 4, 2020.  Dkt. No. 1.  The initial complaint asserted four causes of action: (1) reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3); (2) equitable relief under 42 U.S.C. § 1983 for defendant's deprivation of Plaintiff's rights under the IDEA by failing to implement the FOFD; (3) a claim under the IDEA's own enforcement authority asking the Court to direct Defendant to comply with the FOFD; and (4) a claim that Defendant caused Plaintiff to breach their contract with ABC, Inc., by not authorizing funding for M.T.'s services through ABC, Inc.

On July 27, 2020, M.H. filed an amended complaint.  Dkt. No. 14.  The amended complaint dropped Plaintiff's fourth cause of action, which sounded in state law.  *Id.*

By order dated October 1, 2020, the Court approved a case management plan over Defendant's objection, permitting limited discovery into two issues: (1) Plaintiff's allegations that the Department failed to implement the amended FOFD by not paying Attentive Behavior for awarded services and (2) Plaintiff's allegation that it should be awarded additional makeup services to compensate for Department's alleged failure to implement the amended FOFD in a timely manner.  The Court entered the order without prejudice to a properly tailored motion for a protective order from either side, if necessary.  Dkt. No. 23.  Subsequently, the parties sparred over discovery and the Court granted in part and denied in part Plaintiff's motion with respect to discovery.  Dkt. No. 26.

Plaintiff moved for summary judgment on April 7, 2021.  Dkt. No. 30.  DOE submitted a cross motion for summary judgment on May 19, 2021.  Dkt. No. 39.  Plaintiff filed a response on June 30, 2021.  Dkt. No. 49.  The parties submitted legal memoranda in support of their motions, *see* Dkt. Nos. 34, 43, 48; as well as declarations, *see* Dkt. Nos. 31, 32, 35, 40, 41, 45, 46, 47; and Local Rule 56.1 Statements, *see* Dkt. Nos. 33, 39, 42.

While the motions for summary judgment were pending, Plaintiff moved for a preliminary injunction requiring Defendant to confirm to non-party Proud Moments the remaining ABA hours not in dispute and that were available under the FOFD.  Dkt. No. 44.  The Court denied the motion on the grounds that, after it was filed, Defendant had filed a declaration setting forth the balance available of ABA services that Plaintiff could provide to Proud Moments as a representation made by the Defendant in a judicial proceeding, and that as a result Plaintiff had not shown a basis for preliminary injunctive relief from the Court.  *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex*, 477 U.S. at 323).  In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor."  *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on

conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9-10 (2d Cir. 1983).

## DISCUSSION

The competing motions present two separate sets of issues for the Court to decide: (1) Plaintiff's motion for fees, costs, and interest; and (2) whether equitable relief should be granted to ensure Defendant's compliance with the FOFD.  The Court considers these issues in turn.

## I.      Fees, Costs, and Interest

Plaintiff seeks an award of $191,436.65 in fees, costs, and interest for work it performed at the administrative and federal court stages in this case.  *See* Dkt. No. 47 ¶ 7 (revising the previous grand total); Dkt. No. 35 ¶ 131 (stating the original total request of $179,766.27). Defendant responds that the rates requested by Plaintiff exceed those prevailing in the community, that the hours billed are unreasonably high, and that Plaintiff should be awarded at most $53,955.44.  *See* Dkt. No. 43 at 30.  The Court begins with the award of attorney's fees.  It then turns to costs and interest.

### A.      Attorney's Fees

#### 1.      General Principles

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i); 20 U.S.C. § 1415(i)(3)(B)(i)(I).  The statute mandates the fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded . . . ."  *Id.* § 1415(i)(3)(C).  The award thus must be "reasonable" and may not be based on rates exceeding those "prevailing in the community."[5]

---

[5] As a threshold matter, neither party disputes that Plaintiff is entitled to an award of attorneys' fees.  Plaintiff states "M.H., the prevailing party at the underlying administrative due process hearing, is entitled to attorneys' fees and costs associated with this matter."  Dkt. No. 34 at 13. Defendant does not dispute that Plaintiff is entitled to some award, but rather disputes the

The Court applies the interpretation of a "reasonable attorney's fee" that has been developed in connection with all civil rights fee-shifting statutes. *A.R. ex rel. R.V*, 407 F.3d at 75 ("[W]e 'interpret the IDEA fee provisions in consonance with those of other fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B. v. N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006). The purpose of allowing attorneys' fees in a civil rights action "is to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "When a plaintiff succeeds in remedying a civil rights violation, . . . he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)). "[T]he fee-shifting feature of the IDEA – including the authority to award reasonable fees for the fee application itself – plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves." *G.T. v. N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)).

In determining a reasonable fee, "[t]he district court must ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum

---

amount of the award. *See, e.g.*, Dkt. No. 43 at 4.

necessary to litigate the case effectively." *Ortiz v. City of New York*, 843 F. App'x 355, 359 (2d

Cir. 2021) (quoting *Lilly v. City of N.Y.*, 934 F.3d 222, 228). The Court also considers the

*Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the level of skill required to perform the legal service properly; (4) the
> preclusion of employment by the attorney due to acceptance of the case; (5) the
> attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the
> time limitations imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in similar
> cases.

*Lilly*, 934 F.3d at 228. "A district court need not recite and make separate findings as to all

twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee

award.'" *C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *4 (S.D.N.Y. Aug. 9,

2018) (quoting *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, 2014 WL 1092847, at * 3 (S.D.N.Y.

Mar. 17, 2014)); *see also C.B. v. N.Y. City Dep't of Educ.*, 2019 WL 3162177, at *5 (S.D.N.Y.

July 2, 2019) (same).

After determining a reasonable hourly rate, the Court multiplies "that rate by the number

of hours reasonably expended to determine the presumptively reasonable fee." *Lilly*, 934 F.3d at

230. "To calculate . . . attorneys' fees, courts apply the lodestar method, whereby an attorney fee

award is derived by multiplying the number of hours reasonably expended on the litigation by a

reasonable hourly rate." *A.R. ex rel. R.V.*, 407 F.3d at 79 (internal quotation marks omitted)

(quoting *G.M. v. New Britain Bd. of Educ.*, 173 F.3d 77, 84 (2d Cir. 1999)). "[T]here is . . . a

strong presumption that the lodestar figure represents a reasonable fee." *Id.* (internal quotation

marks omitted) (quoting *G.M.*, 173 F.3d at 84); *accord I.B. ex rel. Z.B.*, 336 F.3d at 80.

The Second Circuit has stated:

In *Arbor Hill* [522 F.3d 182 (2d Cir. 2008)], we attempted to . . . clarify our circuit's fee-setting jurisprudence.  We instructed district courts to calculate a presumptively reasonable fee by determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.   We explained with respect to the latter:

[T]he district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* [488 F.2d 714 (5th Cir. 1974)] factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

In the wake of *Arbor Hill*, we have consistently applied this method of determining a reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors, and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee.  It is only after this initial calculation of the presumptively reasonable fee is performed that a district court may, in extraordinary circumstances, adjust the presumptively reasonable fee when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

*Lilly*, 934 F.3d at 229-30 (internal quotation marks and citations omitted).

The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  At the same time, however, in reviewing a fee application, "trial courts need not, and indeed should not, become green-eyeshade accountants."  *Fox*, 563 U.S. at 838.  "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Id.*

"[T]he fee applicant bears the burden of establishing entitlement to an award, and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *C.D.*, 2018 WL 3769972, at *7.  The fee applicant must "establish his hourly rate with satisfactory

evidence—in addition to the attorney's own affidavits." *Chambless*, 885 F.2d at 1059 (internal quotation marks and citation omitted). Where the fee applicant presents no evidence to support the timekeeper's relevant qualifications, "courts typically award fees at the bottom of the customary fee range." *C.D.*, 2018 WL 3769972, at *7 (citing cases).

### 2.    Reasonable Hourly Rate

The parties sharply disagree on the reasonable hourly rate to be applied in this case. M.H.'s lead counsel at the administrative stage was Nina C. Aasen, who worked with managing partner Andrew K. Cuddy. Plaintiff argues that a rate of $525 per hour should be applied to Aasen, who was admitted to the New York State bar on January 25, 1994, and to Andrew K. Cuddy, who was admitted on June 19, 1996. Aasen was assisted by Jason Sterne, who drafted the post-hearing brief, and Justin M. Coretti, who attended the first hearing. Benjamin M. Kopp has handled the federal litigation, with very brief support from Kevin Mendillo. Sterne was admitted to the bar on July 13, 1998, Coretti on February 21, 2013, and Kopp on January 13, 2016. Joint Statement ¶¶ 124-128. Plaintiff asks for fees at a rate of $525 an hour for Sterne, and $425 an hour for Coretti, Kopp, and Mendillo. Plaintiff also seeks $225 an hour for paralegal time. Dkt. No. 47 ¶ 7.

Defendant argues that application of the *Johnson* factors warrants a fee no greater than $360 an hour for Cuddy, Sterne, and Aasen, $280 an hour for Coretti and Mendillo, $200 an hour for Kopp, and between $100 and $125 an hour for the paralegals. Dkt. No. 43 at 8.

Plaintiff relies on several sources of evidence in support of the reasonableness of its requested rates. First, Managing Partner Cuddy declares that the customary fees in 2016, and for many matters initiated toward the end of the 2016-17 school year, which CLF agreed to charge M.H, were:

- Senior Attorney: $525.00/hour

- Associate Attorney: $425.00/hour
- Legal Assistant/Paralegal: $225.00/hour

Dkt. No. 35 ¶ 52.  CLF's current hourly rates, as applied to current (and relevant former) staff, include $550 for Cuddy, Sterne, and Aasen; $450 for Mendillo; $425 for Coretti; $400 for Kopp; and $225 for paralegals.  *Id.* ¶ 52 n.1.  Although CLF agreed with M.H. to remove language from the retainer for her responsibility for costs, making the matter entirely contingent on fee-shifting, and a large percentage of the Firm's regular clientele are low-income parents requiring the fee-shifting provision of the IDEA for payments, CLF asks its clientele to remain responsible for fees in "certain scenarios that would either significantly reduce or eliminate [its] ability to collect any fees under the IDEA's fee-shifting provision."  *Id.* ¶¶ 58-59.  "Clients that are able to afford the Firm's rates retain the Firm on a fee-for-service basis."  *Id.* ¶ 60.  Cuddy also identifies several factors that he argues support the requested rate.  Those factors include: (1) the questions before the IHO were difficult and fact-intensive, *id.* ¶¶ 44-45; (2) M.H. received outstanding results compared to her pro se request, *id.* ¶¶ 46-49; (3) CLF was precluded—due to the relatively small size of the parents' bar—from taking on a case from "one of the other tens of thousands of families within the five boroughs requiring [their] services," *id.* ¶ 51; (4) CLF was operating on a shortened time schedule because M.H. reached out toward the end of the 30-day period given to a school district to schedule and hold a resolution meeting, *id.* ¶ 52; *see also* 34 C.F.R. §§ 300.510(c), 300.515; N.Y. Comp. Codes R. & Regs. tit. viii § 200.5(j)(5); (5) children with disabilities are underrepresented because the rates previously approved by courts for special education cases are lower than fee awards for other civil rights cases, making special education cases less attractive and "discouraging more competent counsel – even general practitioners – from taking the time to learn and litigate these matters," Dkt. No. 35 ¶¶ 64-65; (6) CLF maintained a continuing professional relationship with M.H., resulting in multiple decisions

along the way to keep down the costs of her litigation, *id.* ¶¶ 69-71; and (7) attorney and paralegal assignments at each step of the case were appropriately matched to the experiences, reputations, and abilities of those assigned. *Id.* ¶ 72.[6]

Second, Plaintiff relies on records that it obtained through a New York State Freedom of Information Law request for Defendant's records on attorneys' fees where the underlying litigation was initiated by or against the DOE pursuant to (i) the IDEA, (ii) Section 3602-c of Article 73 of the N.Y.S. Education Law, (iii) Article 89 of the N.Y.S. Education Law, and/or (iv) Part 200 of the Regulations of the Commissioner of Education. Plaintiff also reviewed the Court's electronic dockets for the affidavits and declarations of special education lawyers who provide testimony regarding their rates. Dkt. No. 32 ¶¶ 254, 257 (internal quotation marks omitted). A non-scientific review of Plaintiff's compilation of the rates shows that the rates charged by the principal biller vary dramatically, from over $1,000 per hour for the large New York firms (without a specialty in special education law), to a range of approximately $250 to $300 per hour on the low-end and $400 to $500 per hour on the high-end for legal service providers and special education lawyers. *Id.* ¶ 255. Counsel declares that "while Defendant does pay varying proportions of parents' attorney fees in IDEA cases, it is not consistently based on the rates charged," and that "Defendant has paid 80-90% of invoices from practitioners who charge over $600 for services, [and] 20-30% of invoices for practitioners who charge less than $350 for services." *Id.* ¶ 256. The attorney declarations and affidavits "demonstrate that the prevailing hourly rate range in the community in 2018 and 2019 was: (i) $395-$675 per hour for

---

[6] The qualifications of the lawyers involved are set forth in the Cuddy, Kopp, and Aasen declarations. Dkt. No. 35 ¶¶ 91-130 (Cuddy); Dkt. No. 32 ¶¶ 261-72 (Kopp); Dkt. No. 31 ¶¶ 101-11 (Aasen).

experienced attorneys; (ii) $285-$525 for associates; and (iii) $150-$225 for paralegals, all with gradual increases since 2011." *Id.* ¶ 259.[7]

Third, Plaintiff relies on the declaration of another special education lawyer, Irina Roller, who states that her firm's billing rates for the 2018-19, 2019-20, 2020-21, and 2021-22 school years varied between $550-$575 per hour for the managing partner, $375-$450 per hour for senior attorneys, and $275-$500 for associate attorneys. Dkt. No. 46 ¶ 7. Currently, her firm charges $500 an hour for lawyers with 25-27 years of legal experience and 16-18 years of special education experience, and $485 per hour for an attorney with 18 years of legal experience and 10 years of special education experience. Roller stated that she believes these rates are consistent with those charged in this District for attorneys of comparable talent and experience. *Id.* ¶¶ 10-11.

For its part, Defendant relies on the decisions of other Judges in this District considering the reasonable rates for attorneys from CLF on cases before them. In *S.J. v. N.Y. City Dep't of Educ.*, 2021 WL 100501, at *3-4 (S.D.N.Y. Jan. 12, 2021), *modified*, 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), a court in this District awarded fees to Cuddy at a rate of $360 per hour and to Kopp at $200 per hour. The court stated, "the prevailing market rate for experienced, special-education attorneys in the New York area *circa* 2018 is between $350 and $475 per hour." *Id.* at *3 (Schofield, J.) (quoting *R.G. v. N.Y. City Dep't of Educ.*, 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019)).[8] In *R.G.*, Judge Caproni awarded fees based on a rate of $350

---

[7] These figures do not include the hourly rate for a commercial litigator at a large firm whose regular practice is not special education law and whose rate for commercial clients is significantly higher than the rates charged by special education lawyers.

[8] Here, CLF requested payment for legal work it did starting May 19, 2017. *See* Dkt. No. 47-1. Indeed, CLF did much of the legal work in this case was "*circa* 2018." For example, CLF represented Plaintiff in the last and longest IHO hearing on April 18, 2018, submitted a closing brief on Plaintiff's behalf on May 21, 2018, and represented Plaintiff throughout the

per hour for Sterne and Cuddy and $150-$300 per hour for other lawyers. *R.G.*, 2019 WL 4735050, at *7.  In *K.L. v. Warwick Valley Central School District*, 2013 WL 4766339, at *5 (S.D.N.Y. Sep. 5, 2013), *aff'd*, 584 F. App'x 17 (2d Cir. 2014), Judge Cote awarded attorney fees for the administrative portion of an IDEA case at a rate of $250 an hour for senior CLF attorneys and entirely denied compensation for the work on the federal action due to what she found were CLF's "wholly unreasonable" billing practices in that case. *Id.* at *4.  In *O.R v. N.Y. City Dep't of Educ.*, 340 F. Supp. 3d at 365 (S.D.N.Y. 2018), Judge Gorenstein awarded fees at a rate of $350 an hour for an attorney with nine years of experience (including seven in IDEA law) and $225 an hour for an attorney with six years of litigation experience (including one year in IDEA law).

Each of these approaches has its own inherent flaws.  The fact that M.H. may have agreed that CLF should be paid at a particular rate does not establish that such rate is reasonable. *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015) ("On a fee-shifting application, . . . the governing test of reasonableness is objective; it is not dictated by a particular client's subjective desires or tolerance for spending."); *see also HomeAway.com v. City of New York*, 2021 WL 791232, at *15 (S.D.N.Y. Mar. 1, 2021) ("[T]he fact that the prevailing party has negotiated, or paid its lawyers based on, a particular billing rate is not the test of the rate's reasonableness.").  "[T]he attorney's customary hourly rate" is only one of the *Johnson* factors. *Lilly*, 934 F.3d at 228.  It is entitled to even less weight where, as here, CLF admits those rates are what it agrees to seek when it is awarded counsel fees and not what the client agrees to pay regardless of whether CLF is awarded fees.  *See S.J.*, 2021 WL 100501, at *3 (rates submitted are not indicative of rates actually paid by clients).  CLF does not set forth the rates it is paid in

---

implementation of the FOFD, which began in June 2018.  *See* Joint Statement ¶¶ 24, 25, 36.

those few instances when it has a client who can afford to pay.

For similar reasons, the records CLF obtained through the FOIL request and the review it conducted of attorney declarations and affidavits filed in this District are of limited value. The declarations were made in support of fee requests. They do not reflect what the Court actually awarded and Plaintiff does not indicate whether the rates reflected in the declarations are those that the client paid or would pay the attorney in question. The FOIL requests, which reflect the rates paid to a number of differing attorneys of varying experience lack sufficient context to provide an adequate basis for the Court to make a finding about the proper hourly rate for the attorneys who litigated M.H.'s case. *See S.J.*, 2021 WL 100501, at *3 (declining to rely on similar evidence as a "starting point in the analysis of a reasonable hourly rate, . . . because the . . . evidence either does not substantiate such rates were actually paid (versus claimed), or where rates are asserted to have been actually paid, does not provide relevant context for such rates billed"). Without questioning the veracity of the attorney declarations, it is difficult to say that a rate reflected in the declarations is the "prevailing" rate in the community if it is not actually paid to anyone in the community and the Court routinely discounts it. *See C.B. v. N.Y.C. Dep't of Education*, 2019 WL 3162177, at *5 (S.D.N.Y. 2019) (McMahon, C.J.) (citing cases) (explaining that district courts "have decided not to rely too heavily [on such] affidavits, since they may only provide isolated examples of billing rates of a few lawyers, may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients"). The declaration by another attorney in the IDEA area also is of some, albeit limited, value. Accepting the claims in the declaration as true because they are undisputed, at most they show the rates that one attorney believes are reasonable. They do not indicate which, if any, clients "actually paid the rates they claim to charge" or provide details of

any of the cases. *G.T.*, 2020 WL 1516403, at *4 (discounting similar declarations filed in support of a fee request by Roller); *see also H.C. v. N.Y. City Dep't of Educ.,* 2021 WL 2471195, at *4 n.5 (S.D.N.Y. June 17, 2021) (citing cases and declining to award any weight to affidavits from other attorneys because they do not provide the context necessary to properly apply the *Johnson* factors); *C.B.*, 2019 WL 3162177, at *8 ("[T]he Court finds these declarations instructive, [but] they cannot be so easily taken at face value.")[9]

The Defendant's approach also is flawed. First, as Judge Parker recently noted, reviewing similar declarations, "[t]hese affidavits also highlight the increasing complexity of IDEA matters and the need for parents of children with special needs to obtain specialists in this area to effectively litigate their claims." *D.B. ex rel. S.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *4 (S.D.N.Y. Apr. 22, 2019). Those concerns cannot simply be dismissed out-of-hand, as Defendant would do.

Second, CLF is entitled to attorneys' fees based on the "'prevailing market rate,' i.e., the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). That rate "is not ordinarily ascertained by reference to rates awarded in prior cases." *Id.* Instead, "the equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicants counsel," *id.*, and it "requires an evaluation of evidence proffered by the parties," *id.* at 209. "Recycling rates awarded in prior cases without considering

---

[9] Because the Court puts little weight on Ms. Roller's declaration, it need not address Defendant's argument that it should be stricken because it was filed only in reply. Dkt. No. 52-2.

whether they continue to prevail may create disparity between compensation available under [the fee-shifting statute] and compensation available in the marketplace.  This undermines [the fee-shifting statute's] purpose of attracting competent counsel to public interest litigation."  *Id.* Unthinking application of fee rates simply because they were approved in the past also runs the risk of freezing fee awards in place.  Thus, while a court may take "judicial notice of the rates awarded in prior cases and [employ its] own familiarity with the rates prevailing in the district," the law requires "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel."  *Id.*

The Court applies this principle to fee litigation under the IDEA.  It consults the decisions of sister courts, but it is not bound by them.  *See C.B*, 2019 WL 3162177, at *5 (stating that while courts may take "judicial notice of past awards given to the same attorneys as counsel in the current case, particularly for firms active in IDEA-related matters, . . . reasonable hourly rates awarded in past cases are not binding precedents"); *C.D.*, 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (declining to apply rate approved in earlier cases because "[w]hile that approved rate is instructive, some four or more years have passed between 2011 and 2015-2016, when the bulk of the work at issue here was undertaken"); *M.D. v. N.Y.C. Dep't of Educ.*, 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018) (refusing to adopt the rates awarded in a previous case because "[t]he [previous case] . . . is five years old").  The Court may consider the passage of time, the increase in fees that may come with such passage of time, and the matriculation of attorneys over that passage of time as junior attorneys gain experience and become more senior. *See C.D.*, 2018 WL 3769972, at *6.  In addition, the Court keeps in mind that "a 'reasonable fee' must still be 'sufficient to induce a capable attorney to undertake the representation of a

meritorious civil rights case.'" *C.B.*, 2019 WL 3162177, at *4 (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

This case-specific inquiry is reflected in the very cases upon which Defendant relies. Those cases consider rates approved in other decisions; they eschew, however, a rule of law that would find a rate reasonable and anything above it unreasonable simply because it has been applied in an earlier decision. Thus, in 2018, Judge Engelmayer approved an award of $400 per hour for Cuddy and Sterne—$40 an hour higher than the maximum Defendant says should be paid here and $125 less than what was requested for each lawyer—after noting that a $375 fee had been approved by Cuddy and Stern in 2011 and that "some four or more years had passed between 2011 and 2015-2016, when the bulk of the work at issue here was undertaken," during which "the Cuddy Law Firm has grown substantially . . . ." *C.D.*, 2018 WL 3769972, at *13. Likewise, in 2019, Judge McMahon awarded fees at a rate of $400 per hour for Cuddy and Stern—again, $40 higher than what Defendant argues as the maximum here, but $125 less than what counsel sought—for administrative work done through mid-2017. *See C.B.*, 2019 WL 3162177, at *8 (McMahon, C.J.).

After considering all the evidence submitted by each party, along with the *Johnson* factors, the Court concludes that a rate of $420 an hour for the time of Aasen, Cuddy, and Sterne is consistent with the prevailing rate in the community and is an amount that a reasonable client would pay based on their skill, experience and reputation, taking into accounting the success that they achieved. First, each of Aasen, Cuddy, and Stern has substantial experience. Aasen received her J.D. degree in 1990 from Syracuse University College of Law and in 2018 had approximately 24 years of practice in education law, first at her own firm and then as a senior attorney at CLF. She also was an elementary school teacher for a collective total of 13 years.

Dkt. No. 31 ¶¶ 101-111 (describing Aasen qualifications).  Cuddy received his J.D. degree from

State University of New York ("SUNY") at Buffalo School of Law in 1996 and has litigated

hundreds of special education due process hearings since 2001.  He lectures on topics in the

special education field and is the author of a guide to the impartial due process hearing; he also is

the Founder and Managing Attorney of CLF.  Dkt. No. 35 ¶¶ 91-100.  Sterne received his J.D.

degree from SUNY at Buffalo the same year, practiced general litigation from his admission to

the bar in 1998 to 2005, and has concentrated in special education law since 2005.  As of

September 2017, he had drafted the closing briefs in more than 150 IDEA impartial due process

hearings and had conducted numerous multi-day impartial due process hearings.  Dkt. No. 109.

The rate also is intended to take into account the time period during which the services

were performed, as well as the delay counsel has experienced in being paid.  *See infra*.  Cuddy

and Stern were awarded fees in 2018 based on a rate of $400 an hour for work done in 2017.

The work here was done in 2018 and the fees will not be awarded until 2021.

The rate is also consistent with "the time and labor required," "the novelty and difficulty

of the questions involved," and "the level of skill required to perform the legal service properly."

*Lilly*, 934 F.3d at 228 (quoting *Arbor Hill v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir.

2008)).  The Court accepts that the questions involved here were not the most complicated

questions under the IDEA; Plaintiff simply claimed denial of a FAPE and predetermination.

Still, this case is far from those cases such as *M.D.*, 2018 WL 4386086, at *3, where liability was

"essentially uncontested" and the Court still awarded fees of $360 per hour for the most senior

CLF attorneys.  *See G.T. v. N.Y.C. Dep't of Educ.*, 2020 WL 1516403, at *5 (approving hourly

rate of $375 for senior attorney where proceeding was "essentially uncontested"); *H.C. v. New

York City Dep't of Educ.*, 2021 WL 2471195 at *6 (S.D.N.Y. June 17, 2021) (assigning rate of

$360 an hour to Cuddy and Stern where "the proceedings were ultimately minimally contested"). The four hearings here summed to a total of just over 7.5 hours, with five witnesses presented by Plaintiff and two witnesses presented by Defendant. These witnesses included the principal of BBF and a school psychologist from the school, both of whose cross-examinations required care and skill. *See* Joint Statement ¶¶ 20-23; *cf. C.B.*, 2019 WL 3162177, at *8 (holding that, although a proceeding that lasted 9.8 hours and in which the DOE produced two witnesses and submitted its own evidence was "'relatively straightforward,' 'straightforward' is not a synonym for 'uncontested'" and that the fees awarded in "essentially uncontested [cases] would be too low here").

Last but not least, "the hourly rates should reflect that counsel secured the relief Plaintiff requested in the underlying administrative proceeding, which is 'the most critical factor' when determining a fee award." *S.J. v. N.Y.C. Dep't of Educ.*, 2021 WL 100501, at *4 (S.D.N.Y. Jan. 12, 2021) (quoting *C.B.*, 2019 WL 3162177, at *11); *G.T.*, 2020 WL 1516403, at *5 (stating that most critical factor is the degree of success obtained by plaintiff's counsel). Here, in a disputed proceeding, Plaintiff obtained relief far greater than she had requested in her initial pro se complaint and even greater than what counsel had requested in the amended due process complaint.

A rate of $280 an hour for each of Coretti and Mendillo, and $200 an hour for Kopp, is appropriate. Each of Kopp, Coretti, and Mendillo have substantially less experience than the other lawyers in the matter. Coretti was admitted to the bar in February 2013, Dkt. No. 33 ¶ 127, and was hired by CLF in 2015, Dkt. No. 35 ¶ 106. He worked on the administrative stage, where there was greater risk and more skill was required. Coretti prepared witnesses for testimony, including M.H., and attended hearings. In *C.D.*, the Court found that a $300 hourly rate was

appropriate for a CLF attorney who had been at the firm since 2012 and had served as lead counsel during the administrative proceedings; however, that attorney was a 1997 law school graduate.  *C.D.*, 2018 WL 3769972, at *6-7.  The *R.G.* court awarded the same rate to a lawyer who began litigating IDEA cases in 2008 and specialized in them beginning in 2012.  *Id.* at *3. Although Coretti is somewhat more junior to those lawyers, the work he performed was commensurate with the work they performed, and he achieved substantial success.  In *H.C. v. New York City Department of Education*, 2021 WL 2471195 (S.D.N.Y. June 17, 2021), the court held that a $300 hourly rate should be assigned to Mendillo because he was practicing law for more than 10 years.  But in *H.C.*, Mendillo was lead counsel in the two administrative proceedings.  *Id.* at *5.  Here, Mendillo worked primarily at the federal court stage, at which point there was no question that M.H. was a prevailing party who would be entitled to some amount of attorneys' fees, and so his work involved lesser risk.  But he is the most senior of the three; he was hired by CLF in 2014.  Dkt. No. 35 ¶ 106.

Kopp graduated from the Syracuse University College of Law in May 2015 and was admitted to the bar in January 2016.  He practiced general commercial law as an associate for his first two years after being admitted to the bar and only joined CLF in April 2018.  Dkt. No. 32 ¶¶ 261-272; Dkt. No. 33 ¶ 128.  His work was more quotidian and carried lesser risk.  He was charged, in part, with corresponding with Defendant regarding implementation after the lawsuit was filed, and, in part, with negotiating with Defendant over attorneys' fees and presenting Plaintiff's argument with respect to attorney's fees.  The work did not involve the same skills as those required of the attorneys who participated in the due process hearing, formulated the arguments for M.H., and prepared the direct and cross examinations and the legal briefing at the administrative stage.  A fee of $200 is appropriate.  *See S.J.*, 2021 WL 100501, at *4 ("The

Report also correctly determined a reasonable rate of $200 per hour for attorney Benjamin Kopp, who graduated from law school in 2015, practiced general litigation for two years and joined the Cuddy Law Firm in 2018."); *A.B. v. N.Y.C. Dep't of Educ.*, 2021 WL 951928, at *5 (S.D.N.Y. Mar. 13, 2021) (finding that an hourly rate of $225 an hour is appropriate for the work of a more junior associate); *G.T.*, 2020 WL 1516403, at *5 (approving rate of $200 an hour for associates who worked only on the civil action and who had fewer than two years of IEDA-related experience when they began doing so); *H.C.*, 2021 WL 2471195, at *6 (assigning rate of $200 an hour to associate who was admitted to practice in 2009 and practiced general litigation from 2009 until 2018, when he joined CLF).

Plaintiff also seeks compensation for the time of paralegals and other non-lawyers spent on the matter.  "Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District."  *A.B*, 2021 WL 951928, at *7 (quoting *R.G.*, 2019 WL 4735050, at *3).  "Paralegals with evidence of specialized qualifications typically receive $120- or $125-per-hour.  Where plaintiffs have failed to provide evidence showing that a paralegal has special qualifications in the form of formal paralegal training, licenses, degrees, or certifications or longer paralegal experience, courts have typically awarded fees at the lower rate of $100-per-hour for that paralegal."  *A.B*, 2021 WL 951928, at *7 (internal citations and quotations omitted).

The paralegals, in order of hours worked, are Allison Bunnell (lead paralegal), Allyson Green, Amanda Pinchak, Sarah Woodward, Shobna Cuddy, Caitlin O'Donnell, and Diana Galgliostro.  In addition, the following administrative assistants and legal assistants worked on the matter: Rebecca Mills, Burhan Meghezzi, and John Slaski.  Of the group, Plaintiff offers evidence that Gagliostro attended American University from 1999-2001, has a Bachelor of Law

degree from the American University in Mangaua, Nicaragua, and has a Master of Science from the University of Phoenix. Dkt. No. 35 ¶ 116.  A rate of $125 an hour is reasonable for her time. *See C.D.*, 2018 WL 3769972, at *7.  With respect to the others as to whom no evidence is submitted regarding their qualifications, the bottom end of a reasonable range of $100 per hour is appropriate.  *Id.*; *G.T.*, 2020 WL 1516403, at *5; *H.C.*, 2021 WL 2471195, at *7 (holding that $100 an hour is a reasonable rate for Bunnell, Pinchak, Woodard, Cuddy, Meghezzi, Slaski, and O'Donnell).

In each of these instances in determining these hourly rates, the Court has attempted to account for the reasonable *current* rates for attorneys of comparable skill, experience, and reputation, and not just the historical rates at the time the services were performed.  As discussed *infra*, the civil rights fee-shifting statutes contemplate that the fee should both be sufficient to account both for the income reasonable counsel would forego at the time by handling the matter (hence, sensitivity to historical rates) and also the current rates to account for the delay in payment from when the services were rendered.  In this case, Plaintiffs have only provided the Court historical rates; they have not provided current rates reasonably charged in the community. Accordingly, while the Court adjusts the rate, it does so only modestly by using a rate within the range from the time but at the slightly higher end of the range than it would have used had there been no delay.

### 3.    Reasonable Hours

After determining the reasonable rates, the Court must determine a reasonable number of hours to be billed.  "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  "If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent

was wasteful or redundant, the court may decrease the award, either by eliminating

compensation for unreasonable hours or by making across-the-board percentage cuts in the total

hours for which reimbursement is sought." *Wise v. Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y.

2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); then citing *Kirsch v. Fleet St.,*

*Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); then citing *New York State Ass'n for Retarded Child.,*

*Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *A.B. v. New York City Department of*

*Education*, 2021 WL 951928, at *7 (S.D.N.Y.  Mar. 13, 2021) ("A fee award should compensate

only those hours that were "reasonably expended" by the attorneys on this case. In determining

the number of hours reasonably expended for purposes of calculating the lodestar, the district

court should exclude excessive, redundant or otherwise unnecessary hours." (internal citations

and quotations omitted)).  A court can "use estimates in calculating and allocating an attorney's

time," since the "essential goal in shifting fees" is "to do rough justice, not to achieve auditing

perfection." *Fox v. Vice*, 563 U.S. 836, 838 (2011).

        a.        **Reasonableness of Hours at the Administrative Phase**

Plaintiff submits the following number of hours billed for the administrative component

of this case:

- Andrew K. Cuddy (attorney): 1.50
- Jason Sterne (attorney): 31.20
- Justin M. Coretti (attorney – travel): 10.00 (billed at half the hourly rate for work)
- Justin M. Coretti (attorney): 12.90
- Nina Aasen (lead attorney – travel): 27.50 (billed at half the hourly rate for work)
- Nina Aasen (lead attorney): 87.80
- Shobna Cuddy (senior paralegal): 1.60
- Sarah Woodard (paralegal): 2.40
- Allison Bunnell (lead paralegal): 32.30
- Amanda Pinchak (paralegal): 3.60
- Diana Gagliostro (paralegal): 0.20
- Rebecca Mills (administrative assistant): 3.70

Dkt. No. 47 ¶ 7.  In total, Plaintiff claims 170.9 hours of attorney time and 43.8 hours of

paralegal or non-legal time, for a total of 214.7 hours for the administrative component.  Plaintiff also submits billing statements with summaries of what each hour was used for.  *See generally* Dkt. No. 47-1.

Defendant argues that Plaintiff's hours should be reduced for each of the following reasons: (1) overbilling for the drafting of the due process complaint, hearing preparation, hearing attendance, and post-hearing briefing; (2) excessive travel time; (3) implementation tasks that should have been billed at a paralegal rate; (4) attorneys' fees prohibited by statute; (5) excessive fee preparation time; and (6) certain other reductions at the administrative level. Defendant also argues that Plaintiff billed excessive costs.  *See* Dkt. No. 40 ¶ 6 ("Costa Declaration"); Dkt. Nos. 40-1, 40-2, 40-3, 40-4, 40-5, 40-6, 40-7, 40-8, 40-9, 40-10, 40-11, 40-12, 40-13, 40-14, 40-15 (recommending new rates and hours for virtually every entry in CLF's timesheets); Dkt. No. 47-1 (CLF's timesheets).

### i.      Due Process Complaint

For entries before the due process complaint (i.e., from May 19, 2017 to June 15, 2017), Defendant argues that the billable hours should be reduced from 23.3 to 18.9; approximately a 19% decrease.  *See* Dkt. No. 43 at 15; Dkt. No. 40-2.  Certain of the hours that are billed allegedly reflect duplicative time, where two paralegals billed time for the same routine work or an attorney and a paralegal billed time for what appears to be the same work (0.5 hours).  The bulk of the Defendant's suggested reductions come from what it claims is excessive time for the drafting of the amended due process complaint (3.5-hour reduction from 13.5 to 10 hours) and 0.4 hours for work related to an initial scheduling conference where the lawyers were waiting for the parties to appear.  Defendant's submission provides no legitimate basis for reducing the hours from May 19, 2017 to June 1, 2017.  *See R.G. v. N.Y. City Dep't of Educ.*, 2019 WL

4735050, at *4 (S.D.N.Y. Sept. 26, 2019) (rejecting DOE argument because court cannot conclude that tasks were unrelated to the preparation of the complaint).

The billed time that Defendant claims was duplicative represents different work by different people. *See C.D. v. Minisink Valley Cent. Sch. Dist.*, 2018 WL 3769972, at *9 (S.D.N.Y. Aug. 9, 2018) ("There is of course nothing inherently wrong with staffing multiple attorneys on a case, a practice that is common to, inter alia, civil rights litigation.").  For example, while it is appropriate for a paralegal to prepare a notice of appearance, it also is appropriate for a lawyer to spend a few minutes looking at that notice before it is filed.

Plaintiff's counsel properly billed the 0.4 hours that she was required to wait during an initial scheduling conference, because Defendant failed to provide the IHO with the code for the telephonic conference and Defendant failed to appear; that time was required and would not have had to be billed but for Defendant's errors.  Moreover, Defendant's submission is simply in error when it asserts that Aasen billed 3.5 extraneous hours for drafting the due process complaint. *Compare* Dkt. No. 40 ¶ 10 *with* Dkt. No. 45 ¶¶ 39-40.

## ii.   Hearing Preparation

Defendant argues that only 70.8 of the 85.6 hours billed preparing for the 8/7/17, 9/19/17, 12/19/17, and 4/8/18 hearings were reasonable, approximately 17% fewer hours than Plaintiff requested.  Dkt. No. 40 ¶¶ 11-15; Dkt. No. 40, Ex 3.  It argues that 0.7 hours for interoffice communications should be deducted completely, that hours spent for hearing preparation time were unreasonable, and that CLF should not receive fees for time preparing an affidavit for a witness who did not submit testimony by affidavit.  Dkt. No. 40 ¶ 13.  It also argues that Coretti overbilled 2.5 hours for witness preparation and direct examination that was duplicative of work performed by Aasen and 0.3 hours for time spent reviewing the transcript of a non-substantive

scheduling hearing that lasted less than 0.3 hours. *Id.* ¶ 14. Defendant further alleges that Aasen overbilled 5.9 hours for witness preparation time, in excess of 2 hours to prepare a witness. *Id.*

For the most part, the time spent for what Defendant characterizes as interoffice communications was appropriately billed; it reflects communications between counsel and a paralegal. However, another 0.7 hours—which was not challenged by Defendant—was spent for a conversation between Aasen and Coretti who was covering during Aasen's vacation. Such time is not appropriately billed, and Coretti's hours are reduced by 0.7. Defendant further challenges 5.3 hours in hearing time as double billing, but the record contradicts that claim. At best, 0.6 hours spent by Coretti in August 2017 to review exhibits that would have been reviewed by Aasen when she made her initial determination to amend the due process complaint were overbilled. The claim that the witness affidavit was not submitted is wrong. Dkt. No. 45 ¶ 53. With one exception, the remainder of Defendant's objections are without merit. That one exception is the 5.9 hours for time Aasen spent preparing a witness. Although Plaintiff attempts to defend these hours by referring to gaps in time and losses and witness memories, as well as the adjournment of the March 2018 hearing, those explanations do not account for the full figure of 5.9 hours. The Court will reduce it by 2.5 hours to 3.4 hours. Plaintiff has voluntarily agreed to reduce 0.6 hours that Bunnell billed. Accordingly, the hours for Aasen are reduced by 2.5 to a total of 85.3 hours, the hours for Coretti are reduced by 0.7 to 12.2, and the hours for Bunnell are reduced by 0.6 to 32.1.

### iii.     Hearing Attendance

Defendant would reduce the time billed for actual substantive hearing attendance from 12.3 hours to 10.7 hours. Dkt. No. 40-3. Defendant's calculation does not account for scheduled hearing times, off-record conversations between the IHO and the parties, or reasonable attorney-client communications before and after hearings. Dkt. No. 45 ¶ 64. However, twelve of

the minutes billed by Plaintiff for Aasen should be removed from the billing records.  Her hours should be reduced by 0.2 to 85.1.

### iv.     Travel Time

CLF billed 37.5 hours for travel time for a total fee claimed of $9,343.75.  Defendant argues that CLF's travel time should be limited to 1 hour in each direction associated with the substantive hearing days of August 7, 2017, September 9, 2017, December 19, 2017, and April 18, 2018, and that travel time on March 7, 2018 should be disallowed in its entirety.  Dkt. No. 40 ¶ 21.

Defendant's argument that travel time should be limited to 1 hour in each direction is well-founded.  *See C.D.*, 2018 WL 3769972, at *10; *K.F. v. N.Y.C. Dep't of Educ.*, 2011 WL 3586142, at *6 ("A reasonable attorney's fee does not include the time for commuting from Auburn or Ithaca to Brooklyn and back."); *U.S. ex rel. Feldman v. Van Gorp*, 2011 WL 651829, at *3 (S.D.N.Y. Feb. 9, 2011) (denying attorney's fees for travel time and costs related to travel to this District by a Philadelphia-based lawyer in an IDEA case); *Imbeault v. Rick's Cabaret Int'l Inc.*, 2009 WL 2482134, at *8, n.3 (S.D.N.Y. Aug. 13, 2009) (disallowing fees for travel between home city of Minneapolis and litigation forum in this District in a FLSA case). Defendant's argument that the travel time on March 7, 2018 should be disallowed, on the other hand, is without merit.  The conference scheduled then was only subsequently adjourned.  Aasen Decl. ¶¶ 61-64; Dkt. No. 45 ¶ 70.  There was nothing unnecessary at the time about Aasen's travel to that conference.

Plaintiff argues that travel time should not be reduced because the pro se Plaintiff relied on the recommendation of a close friend who happened to be a CLF client and because she comes from an underrepresented population and thus her retention of CLF did not take work away from attorneys in the Southern District of New York.  Dkt. No. 45 ¶ 69.  Neither argument

is persuasive.  The logic for limiting the pay counsel can receive for travel time is based on the

policy of the statute.  Fee-shifting statutes promote enforcement of the law with the promise that

counsel—if she prevails—will receive a reasonable attorneys' fee, i.e., the fee a reasonable

attorney would receive given the risks and rewards of the matter, the skill required, and the other

factors.  *See Fox v. Vice*, 563 U.S. 826, 832-33 (2011).  They are not intended to compensate the

particular attorney the fee she would have received had she been privately retained and had her

client had the funds to pay her.  Thus, "the relevant issue is whether a hypothetical reasonable

client would be willing to pay for the full hours of travel expended here."  *C.D.*, 2018 WL

3769972, at \*10.  Under *Arbor Hill*, a court must "step into the shoes of the reasonable, paying

client, who wishes to pay the *least amount necessary to litigate the case effectively*," not the

shoes of the law firm who is asked by the client to retain it and determines its reasonable rate.

*H.C.*, 2021 WL 2471195, at \*7 (S.D.N.Y. June 17, 2021) (quoting *O.R.*, 340 F. Supp. 3d at 364

(quoting, in turn, *Arbor Hill*, 522 F.3d at 184)).  Thus, the question is not whether it was

reasonable for M.H. to retain CLF, an out-of-town firm, to represent her child in a New York

litigation.  A reasonable client might be willing to pay travel time for an out-of-town lawyer if

that travel time was limited to one hour each way and was billed at half the attorney's reasonable

rate.  *See id.*  "[A] reasonable client would [not] agree to pay its counsel rates customary for this

District and for protracted travel time to and from Auburn."  *Id.*

Finally, Defendant argues that CLF should only be compensated at 50% of its recommended reduced hourly rates. *See C.D.*, 2018 WL 3769972, at *10 ("Courts generally approve fees, at 50% of an attorney['s] usual rate, for reasonable travel conducted in service of ongoing litigation." (citing *K.F.*, 2011 WL 3586142, at *6)); *see also L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) ("Courts in this Circuit regularly reduce attorneys' fees by 50 percent for travel time."). CLF already charges only 50% of its rates for travel.

Coretti's travelling hours are reduced by 8.0 to 2.0, while Aasen's travelling hours are reduced by 21.5 to 6.0.

### v. Post-Hearing Brief

Defendant challenges 13.6 hours of the 36.8 hours it classifies as hours related to post-hearing briefing. Dkt. No. 40 ¶¶ 24-25. The hours were billed by two attorneys and two paralegals on a 20-page brief of a record spanning hundreds of pages. As a general matter, the hours spent on the post-hearing brief were reasonable. *See C.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 3162177, at *11 (S.D.N.Y. July 2, 2019) (rejecting DOE argument that hours for post-hearing brief were excessive). On the other hand, certain of Defendant's challenges are well-founded. Portions of Sterne's time were spent performing annotation work that could have been performed by a paralegal, while some of his work appears to be either duplicative or unnecessary. Five hours should be eliminated from Sterne's time, bringing him from 31.2 hours to 26.2 hours.

### vi. Implementation

CLF billed 21.4 hours for implementation tasks following the issuance of the FOFD on June 7, 2018, for a total claimed fee of $5,732.50. "'[P]ost-decision activities' that are 'largely

useful and of a type ordinarily necessary to secure the final result[s] obtained' are compensable."
*C.B.*, 2019 WL 3162177, at *11 (quoting *M.D.*, 2018 WL 4386086, at *5).

Defendant does not dispute the reasonableness of the time spent on implementing the
FOFD, but argues that the 2.9 hours billed by attorneys should have been billed out at the
paralegal rate.  Dkt. No. 43 at 26.  The DOE claims that CLF has not shown "why such routine
implementation task work could not have been done by paralegals."  *Id.* at 26 n.14.  CLF
disputes that claim and argues that the work performed by Coretti and Aasen involved legal
skills, interpretation of the FOFD, and supervision of the paralegal staff in communicating with
the DOE, and thus are appropriately billed out at attorney time.

The Court has reviewed the challenged time entries.  They involve minimal time
supervising the paralegals, reviewing correspondence, and speaking with the DOE.  The work is
necessary lawyer-work and the time is reasonable.  The case DOE cites for the proposition that
the implementation work should have been done entirely by paralegals and that no attorney time
is appropriate is inapposite.  In *C.B.*, 2019 WL 3162177, at *11, the Court approved CLF's
requests that fees be awarded for paralegal time spent implementing the results of the hearing.
The Court did not hold, and no party argued, that only paralegals could reasonably be involved in
implementation work.  The Court approves the time spent in full.

### vii.    Attorney's Fees Prohibited by Statute

Defendant argues that CLF should not be paid for 0.2 hours billed by Aasen and 0.2
hours billed by Bunnell in connection with the resolution session for total fees.  Dkt. No. 43, at
26.  It relies on 20 U.S.C. § 1415(i)(3)(D)(iii), which provides "[a] meeting conducted pursuant
to subsection (f)(1)(B)(i) shall not be considered – (I) a meeting convened as a result of an
administrative hearing or judicial action; or (II) an administrative hearing or judicial action for
purposes of this paragraph."  The section refers to the resolution meeting required to be held by

the local educational agency with the parents and a relevant member or members of the IEP team prior to the opportunity for an impartial due process hearing.  *See id.* § 1415(f)(1)(B)(i).  Under the statute, the local educational agency may not be accompanied by an attorney unless the parent is accompanied by an attorney.  *Id.* § 1415(f)(1)(B)(i)(III).  "[A]ttorneys' fees for time actually spent at a resolution session . . . generally are not compensable under the IDEA," but "if a settlement offer is rejected at the resolution session and the matter goes forward, a parent is still entitled to attorneys' fees under the statute for time spent on behalf of the client before and after the resolution session if the parent ultimately is the prevailing party."  *D.D. ex rel Davis v. District of Columbia*, 470 F. Supp. 2d 1, 2 (D.D.C. 2007); *see also M.K. ex rel. C.K. v. Arlington Cent. Sch. Dist.*, 2019 WL 92004, at *7 (S.D.N.Y. Jan. 3, 2019) (holding that parent was not entitled to attorneys' fees for time spent at the resolution session and travel to and from the resolution session).

Aasen and Bunnell had a conversation (0.1 increment) regarding the resolution meeting and additional disclosure needed.  In addition, Aasen reviewed correspondence regarding the end of the resolution period and Bunnell reviewed an email from the client and drafted an email to the client regarding the resolution meeting.  No time was billed for actual attendance of the resolution meeting.  Defendant's arguments are rejected.

### viii.    Fee Preparation Time

Counsel is entitled to reasonable fees for the time necessary to compile their time entries. *R.G.*, 2019 WL 4735050, at *4.  By Defendant's classification, CLF billed 6.4 hours in preparing its fee claim and negotiating at the administrative level.  Dkt. No. 42 ¶ 150; Dkt. No. 40 ¶ 32; Dkt. No. 40, Ex. 9 at 1.  Defendant argues that the amount should be reduced to 2 hours because time spent making discretionary reductions and negotiating with DOE should not be compensated.

After reviewing the time entries, the Court concludes that Defendant's arguments are without merit, with a single exception. The Court cannot say that most of the time billed by counsel and a senior paralegal was unnecessary. It would be inappropriate for a law firm to submit a fee request to an administrative agency or to a court without a lawyer having reviewed the request and the hours billed; it also would be inappropriate for the lawyer to do so without relying on a paralegal. Defendant also offers no basis for excluding time spent negotiating with DOE. There has been no showing that CLF negotiated in bad faith or otherwise wasted time. The law should encourage parties to attempt to resolve fee disputes and should not dock them pay for the time spent doing so. The single exception has to do with the 1.5 hours billed by Cuddy for reviewing the billing statement for accuracy and discretionary reductions. Plaintiff has not explained why that task required more than one hour and the Court thus will reduce Cuddy's hours by one-half hour. His hours are reduced to 1.0.

### ix. Other Reductions at the Administrative Level

Defendant challenges 0.5 hours spent by Bunnell in October 2017 looking at other schools for a placement for M.T. and drafting an email to the client regarding schools for placement. Defendant claims that the time spent finding a different school placement for M.T. was not part of the underlying due process complaint. Dkt. No. 40 ¶ 35; Dkt. No. 43 at 27. Bunnell billed for M.H. seeking and receiving preliminary information about nonpublic schools that could be more appropriate for M.T. in light of the ordered evaluations, so that M.H. could make an informed decision about whether to request a second amended due process complaint. The objection is therefore rejected.

### x. Overall Assessment

The Court also has reviewed the billing records as a whole for any telltale signs of overbilling, such as the failure to set forth evidence of the necessity of services, duplication of

services, blockbilling, billing paralegal or attorney time for clerical or office administration tasks, vague entries, claiming a service that was evidently not performed, billing multiple attorneys and paralegals involved in internal conferences or discussions, excessive communication with co-counsel, the practice of counsel and paralegals in billing a plethora of 0.1 hour services for minor tasks of minimal duration, and billing for time spent by senior attorneys on work that should have been performed by lower-billing attorneys. *See C.D.*, 2018 WL 3769972, at *8. The Court has not found evidence of those practices with respect to the work done at the administrative level. The time is recorded in appropriate increments, contemporaneously, and in great detail. The work was done by lawyers and non-legal staff of appropriate seniority and there was not a practice of billing in 0.1 hour increments. With the adjustments made by the Court, the total number of hours reasonable expended by CLF attorneys and staff was as follows:

- Andrew K. Cuddy (attorney): 1.0
- Jason Sterne (attorney): 26.2
- Justin M. Coretti (attorney – travel): 2.0 (billed at half the hourly rate for work)
- Justin M. Coretti (attorney): 12.2
- Nina Aasen (lead attorney – travel): 6.0 (billed at half the hourly rate for work)
- Nina Aasen (lead attorney): 85.1
- Shobna Cuddy (senior paralegal): 1.60
- Sarah Woodard (paralegal): 2.40
- Allison Bunnell (lead paralegal): 32.1
- Amanda Pinchak (paralegal): 3.60
- Diana Gagliostro (paralegal): 0.20
- Rebecca Mills (administrative assistant): 3.70

### b.    Reasonableness of Hours at the Federal Court Stage

### i.    Federal Hours

Plaintiff submits the following number of hours billed for this case's federal component:

- Andrew K. Cuddy (attorney): 29.60
- Jason Sterne (attorney): 1.40
- Justin M. Coretti (attorney): 0.20

- Nina Aasen (lead attorney): 0.60
- Benjamin M. Kopp (attorney): 206.40
- Kevin Mendillo (attorney): 0.20
- Jaclyn Kaplan (attorney – serve process): 1.00
- Allison Bunnell (lead paralegal): 7.20
- Allyson Green: 4.70
- Burhan Meghezzi (legal assistant): 0.70
- Cailin O'Donnell: 3.70
- John Slaski (legal assistant): 0.20
- Shobna Cuddy (senior paralegal): 4.60

Dkt. No. 47 ¶ 7.  In total, Plaintiff claims 238.4 hours of attorney time and 22.1 hours of paralegal or non-legal time, for a total of 260.5 hours expended at the federal court stage.

The IDEA gives a prevailing parent the right to receive its reasonable attorneys' fees and costs incurred in a federal court action related to vindicating its rights.  *See C.D. v. Minisink Valley Central School District*, 2018 WL 3769972, at *11 (S.D.N.Y. Aug. 9, 2018; *J.S.*, 2011 WL 3251801, at *8 ("[R]equested fees for the federal action are reasonable.").  Those fees may be incurred in enforcing the rights of the parent or counsel, under the IDEA, to a reasonable attorneys' fee.  Although "[a] request for attorney's fees should not result in a second major litigation."  *Hensley*, 461 U.S. at 437; *accord C.B.*, 2019 WL 3162177, at *12, neither should the threat that counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the administrative stage to an inadequate settlement or to a compromise of the parent's rights.  To paraphrase Judge Parker, "[t]o hold otherwise [and not to grant counsel reasonable fees for time spent preparing fee applications] would further deter [both] private attorneys [and] resource strapped non-profits in important civil rights matters."  *D.B. ex rel. S.B. v. N.Y.C. Dep't of Educ.*, 2019 WL 6831506, at *6 (S.D.N.Y. Apr. 22, 2019).

Counsel also is entitled to fees and costs incurred in enforcing the decision of an IHO and a FOFD.  *See H.C. v. N.Y.C. Dep't of Educ.*, 2021 WL 2471195, at *10 (S.D.N.Y. June 17, 2021)

(holding that where a complaint is not confined to the issue of attorneys' fees, but also sought
equitable relief under 42 U.S.C. § 1983, counsel is entitled to be reasonably compensated for that
work). "To uphold the IDEA's purpose of providing educational services to disabled children,
parents must be able to choose litigation if they believe that is necessary to effectively enforce
order given by IHOs." *SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, 2004 WL 1586500, at *4
(S.D.N.Y. July 14, 2004). "Limiting the actions plaintiff might take to force implementation of
an IHO's decision can only reduce the urgency school districts would attribute to the
implementation of an IHO's decision and thereby lessen the credibility of the IHO process." *Id.*
At the same time, however, the Court must recognize the limited value that the hours spent
enforcing the FOFD provided to Plaintiff and reasonably could have been understood to have
provided to Plaintiff. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial
or limited success, the product of hours reasonably expended on the litigation as a whole times a
reasonably hourly rate may be an excessive amount."); *C.B.*, 2019 WL 3162177, at *4 ("If the
hours spent on litigation appear excessive in light of the success obtained, the court has
discretion to eliminate specific hours or reduce the final award.").

    With those principles in mind, the Court analyzes Plaintiff's fee request and Defendant's
arguments. Defendant argues that the Court should make deductions in the federal action for
excessive billing in the drafting of the complaint, time spent negotiating settlement, duplicative
internal communications, implementation tasks that should have been billed at a paralegal rate,
unnecessary time spent amending the complaint, time spent on unnecessary tasks, excessive time
spent on preparing CLF's fee application, and otherwise excessive time entries. Dkt. No. 43 at
30. Defendant argues that CLF is only entitled to a total of 64.25 hours of work on the federal
action. *Id.* The Court reviews each of Defendant's objections in turn.

The Court concludes that a modest reduction should be made for the time Kopp spent on the federal court complaint. Kopp spent 5.9 hours on activities related to the original complaint, including drafting, service, and review of the court's rules, and then an additional 3.1 hours on the amended complaint, for a total of 9.0 hours. Defendant argues that Plaintiff is entitled only to 1.5 hours on the drafting of the complaint and activities associated therewith, and is not entitled to compensation for any hours in connection with the amendment because the amendment dropped a claim that had been improperly included in the original complaint. The Court will reduce the total time to four hours. Although it might be appropriate to reduce the time spent on a complaint limited to attorneys' fees to 1.5 hours if that time was spent by a senior lawyer or a lawyer who charged at a higher rate, Kopp was a junior lawyer who is being compensated at a more junior rate. Moreover, the complaint did not address only attorneys' fees, but also the implementation and enforcement issues. Thus, while the pleading was more complicated than a "pro forma" IDEA complaint, Dkt. No. 40 ¶ 44, nine hours is still excessive. Kopp billed hours for withdrawing a claim that should never have been brought in the first place. CLF achieved limited success on the enforcement claims—the DOE focused on, and paid, the outstanding bills—but that success inured only to the benefit of Plaintiff in an attenuated way. There is no evidence M.T. was deprived of services as a result of the DOE's failure to pay. The reduction to four hours takes into account the limited value of the work on the implementation and enforcement issues.

The Court rejects Defendant's argument that fees should be eliminated for the cost of attempting to negotiate a settlement. Defendant argues that the 7.2 hours Kopp spent negotiating a settlement should be eliminated entirely, on the theory that Kopp asked for more than was ever previously awarded to CLF in other cases. Dkt. No. 40 ¶ 45. Kopp disputes that his request was

based on a calculation that exceeded prior cases.  It is unreasonable for Defendant to make this argument when it refused to specify to Plaintiff the hours it believed to be unreasonable.  In any event, no two cases are exactly comparable.  It is difficult to tell whether Plaintiff's fees were higher in all respects than in other cases, nor is it necessary.  The time entries reflect that Kopp was responding to contacts made by counsel for Defendant.  There is no argument that Kopp was not negotiating in good faith and attempting to achieve the best result for his firm and his client, as well as for the special education bar, within the confines of the law.  His hours in doing so were not excessive.  If it were the case that the fees Kopp was seeking were higher than in previous cases, no law prevents counsel from arguing that—on the facts of his case—the fee award should be higher.  Defendant could have cut short the negotiations at any point if it believed Kopp was not negotiating in good faith or that the negotiations were a waste of time. As the Court has concluded, neither Plaintiff nor Defendant were right in how they calculated fees.

Defendant argues that 16.4 hours of time spent by Cuddy, and in one instance by Mendillo, supervising Kopp should be eliminated entirely.  Dkt. No. 40 ¶ 46.  Cuddy consulted with Kopp on the amended complaint, negotiating positions, the conferences with the Court, the possibility of an order to show cause, and on the summary judgment motion.  The Court would have expected Cuddy to do so.  Defendant cannot have it both ways, reducing Kopp's hourly rate to that of a junior lawyer requiring supervision, and then attempting to withhold the fees associated with that supervision.  The hours should be reduced only to reflect the limited result and value of the enforcement aspects of this case, and should be reduced by about 33%. Accordingly, Cuddy's hours will be reduced by 5.4 hours, to 24.2 hours.

Defendant's argument that CLF should be compensated only at a senior paralegal rate for what it characterizes as "implementation" tasks, and that all of Kopp's 9 hours spent on such tasks should be billed at a rate of $125 per hour, is meritless.  Dkt. No. 40 ¶ 47.  Implementation was a central feature of the complaint in this case because Defendant failed to pay the provider, as required by the FOFD.  It thus was reasonable for a junior attorney like Kopp to have the conversations with both the client and the provider about the implementation of the FOFD, particularly when that implementation was a fact in dispute between the parties and when counsel for Defendant indicated to Plaintiff he was interested in working with counsel to resolve it.  Dkt. No. 45 ¶ 143.  Kopp's work pertained to the ongoing litigation.  Indeed, as Plaintiff points out, the contrary way of proceeding—which would have had Kopp instruct the paralegal, then have the paralegal make the calls at issue, and then have the paralegal report back to Kopp—would have probably generated higher fees.  Dkt. No. 45 ¶ 141.  The argument is rejected.

Defendant's objection to 0.9 hours of Cuddy's time preparing the fee application is meritless.  The time included review of the final version of the memorandum on fees and implementation submitted to the Court.  Cuddy was the senior lawyer on the matter; it was appropriate for him to review a federal court filing prepared by a junior lawyer on the team.  *See C.D.*, 2018 WL 3769972, at *9 n.11.

Defendant argues that 17.38 hours of Kopp's time spent on what it characterizes as unnecessary tasks should be eliminated.  Dkt. No. 40 ¶ 49.  The 17.38 hours includes time spent scheduling phone calls, preparing detailed stipulated facts at the outset of the case, seeking an OT evaluation from Defendant in lieu of retaining an expert for litigation, researching how to serve a subpoena, and drafting a declaration relating to fee claims submitted to DOE in other

matters.  Defendant also argues that the remaining 93.17 hours billed by Kopp should be reduced by 75%, or 69.88 hours, to 23.29 hours.  Dkt. No. 40 ¶ 51.  The DOE does not offer a critique on any particular items, but argues generally that the time was excessive compared to what was at issue in this case and fee request litigation in general.  Defendant's position has force, but not to the extent it argues.  The hours should be reduced substantially to account for excess and unnecessary time spent, and for the limited results of the enforcement aspect of the federal litigation.  For example, many of the hours in this category were spent on discovery matters and unnecessary time negotiating and preparing summary judgment papers.  Although discovery is permitted in IDEA cases, particularly when the "evidence concern[s] relevant events occurring subsequent to the administrative hearing," *Genn v. New Haven Bd. of Educ.*, 2014 WL 28689, at *1 (D. Conn. Jan. 2, 2014) (quoting *Plainville Bd. of Educ. v. R.N.*, 2009 WL 2059914, at *1 (D. Conn. July 10, 2009)), and the Court here permitted discovery, that does not mean that all the time for discovery was well spent.  Courts express reluctance to allow discovery unless there is a "particularized and compelling justification," *N.J. v. N.Y. City Dep't of Educ.*, 2021 WL 965323, at *8 (S.D.N.Y. Mar. 15, 2021) (quoting *Ganje ex rel. J.M.G. v. Depew Union Free Sch. Dist.*, 2012 WL 5473491, at *16 (W.D.N.Y. Sept. 26, 2012)), and here Plaintiff was not able to explain at argument or in its submissions what it gained—or reasonably expected to gain—from the hours it spent litigating the right to discovery.  Plaintiff established that Defendant knew that it had to pay the outstanding invoices, but it already had that evidence in its possession from its correspondences with Defendant.

Other hours were spent on the enforcement component, including on a meritless request to obtain preliminary injunctive relief.  Those hours are appropriately removed.  For the same

reason, hours spent researching Attentive Behavior's billing practices and other related matters were not well spent and are removed.

Kopp spent 6.9 hours preparing Cuddy's 26-page declaration, his own declaration, the declarations of Aasen, Cuddy, and M.H., and in otherwise preparing the summary judgment papers. Defendant's reduction of 75% would give Plaintiff virtually no credit for any of those hours, many of which were necessary to present to the Court the relevant facts for the fee dispute it would have to resolve. Taking all of these factors into account, the Court concludes that a reduction of Kopp's hours in these categories by 50%, from 110.55 hours to 55.275 hours, would achieve "rough justice." *See S.J.*, 2021 WL 100501, at *5 (reducing hours by one-half where "a competent attorney should not have needed more than this amount of time to litigate this fee petition").

With the adjustments made by the Court, the total number of hours reasonable expended by CLF attorneys and staff was as follows:

- Andrew K. Cuddy (attorney): 24.2
- Jason Sterne (attorney): 1.40
- Justin M. Coretti (attorney): 0.20
- Nina Aasen (lead attorney): 0.60
- Benjamin M. Kopp (attorney): 146.13
- Kevin Mendillo (attorney): 0.20
- Jaclyn Kaplan (attorney – serve process): 1.00
- Allison Bunnell (lead paralegal): 7.20
- Allyson Green: 4.70
- Burhan Meghezzi (legal assistant): 0.70
- Cailin O'Donnell: 3.70
- John Slaski (legal assistant): 0.20
- Shobna Cuddy (senior paralegal): 4.60

## ii.  Unreasonable Protraction

Plaintiff argues that the Court should not reduce its requested fees and expenses because Defendant unreasonably protracted the proceedings. The IDEA provides that, with a single

exception, "the court shall reduce . . . the amount of the attorneys' fees awarded under this

section" under any one of the following circumstances:

(i)  the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) (ii)  the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii)(iii)  the time spent and legal services furnished were excessing considering the nature of the action or proceeding; or

(iv)(iv)  the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A).

20 U.S.C. § 1415(i)(3)(F)(ii)-(iii).

Plaintiff relies on the single exception.  That exception is that the mandatory reductions

in subparagraph F "shall not apply in any action or proceeding if the court finds that the State or

local educational agency unreasonably protracted the final resolution of the action or proceeding

or there was a violation of this section."  *Id.* § 1415(i)(3)(G).  Plaintiff argues that because

Defendant unreasonably protracted the final resolution of the action, Section 1415(i)(3)(F) is not

triggered and the Court thus should not reduce the requested fees either on a theory that rate

exceeds the prevailing rate in the community or that the hours were excessive.  The conclusion

does not follow from the premise.

There is evidence that Defendant protracted the work that had to be done by counsel for

M.H. in connection with the proceedings.  At the administrative phase, the DOE failed to contact

counsel for M.H. regarding the rates for the evaluators as directed, Dkt. No. 32 ¶ 114, failed to be

prepared with witnesses to call in its case, Dkt. No. 31-7, did not inform counsel for M.H. or the

IHO of its witnesses, *id.*, indicated it would call witnesses whom it did not call, Dkt. No. 32

¶¶ 57-58, and was generally disorganized and unprepared, Dkt. No. 31-7.  As a result, CLF was

forced to attend hearings that could not go forward because the DOE failed to attend, was forced to prepare orders that it should not have had to prepare, and was forced to prepare for witness testimony that ultimately was not offered.  Dkt. No. 31-9.  The DOE delayed paying for the home-based ABA services, necessitating numerous follow-up emails from CLF.  Dkt. Nos. 31-16, 31-17, 31-18, 31-20; 31-7 at 12.  It is less clear that the Department's disorganization and unpreparedness protracted the final resolution in the sense of making the proceedings "prolonged," or longer than what would ordinarily be needed for the conclusion of the proceedings.  *Protract*, Merriam-Webster, https://www.merriam-webster.com/dictionary/protract (last visited July 23, 2021); *see also S.J.*, 2021 WL 100501, at *5 (S.D.N.Y. Jan. 12, 2021) ("[C]onsidering both parties' arguments and their competing version of events that transpired during the administrative proceeding and subsequent federal litigation over fees, the Court does not find that the DOE 'unreasonably protracted' the final resolution of the action.").

In any event, a conclusion that Defendant unreasonably protracted the resolution of the proceedings and forced Plaintiff to engage in what should have been unnecessary work might justify the reasonableness of some of the hours worked by counsel and the paralegals.  However, it would not entitle CLF to more than a reasonable attorney's fee calculated based on the standards well established by the Supreme Court and in this Circuit.  That conclusion follows from the plain language of the statute and established principles of statutory interpretation.  Before one ever gets to Section 1415(i)(3)(F), the statute instructs that the Court's discretion is limited to awarding a "reasonable" attorney's fee and that the fee must be based on rates prevailing in the community in which the action or proceeding arose, as determined by subsection (C).  The caselaw further instructs that in using the term "reasonable" and in referring to the prevailing community rate, Congress intended to pick up and incorporate the meaning of

those terms as long established under a number of civil rights statutes.  Thus, even if the State or

local educational agency has unreasonably protracted the final resolution of the action, a court

does not award a fee that is greater than one that is "reasonable" as that term is understood in the

statute.  *See Somberg ex rel. Somberg v. Utica Cnty. Sch.*, 908 F.3d 162, 181-82 (6th Cir. 2018)

("Subparagraph (G), when found applicable, does not mandate that the district court abandon its

discretion to ensure that fees are reasonable. Such a reading of subparagraph (G) would be

inconsistent with subparagraph (B)'s instruction that only reasonable fees should be awarded in

the court's discretion."); *Williams ex rel. Williams v. Fulton Cnty. Sch.*, 717 F. App'x 913 (11th

Cir. 2017) (rejecting argument that court abused its discretion by reducing fee award where State

unreasonably protracted proceedings); *D.D.M. ex rel. O.M.S. v. Sch. City of Hammond*, 2020 WL

6826490, at *12 (N.D. Ind. Nov. 19, 2020) ("[U]nder the statutory scheme, a finding that the

Defendant unreasonably protracted litigation under § 1415(i)(3)(G) only nullifies

§ 1415(i)(3)(F)'s requirement that the Court reduce fees if it finds that the Plaintiff also

unreasonably protracted the litigation. The Court must still determine what fees are reasonable

and may award those fees."); *Harris v. Friendship Public Charter Sch.*, 2019 WL 954814, at *5

(D.D.C. Feb. 27, 2019) ("Magistrate Judge Harvey properly rejected this interpretation. It is

unsupported by caselaw and has been rejected by other courts").[10]

### c.    Final Attorney's Fees

With both the "reasonable hourly rate[s]" and the "number of hours reasonably

expended" calculated, all that remains is to multiply them together for the "presumptively

---

[10] If the Court's authority is limited to awarding a reasonable attorney's fee, which "shall" be
based on rates prevailing in the communities under subsections (C) and (D), one might
reasonably ask what work (F)(ii) and (F)(iii) do.  There is no clear answer in the case law.

reasonable [attorneys'] fee." *Lilly v. City of N.Y.*, 934 F.3d 222, 229-230 (2d Cir. 2019). The table below summarizes the adjustments and calculations:

| Attorney/Paralegal | Rate per Hour | Hours in Admin Proceeding | Hours in Federal Proceeding | Total Hours | Total |
|---|---|---|---|---|---|
| Andrew Cuddy | $420 | 1.0 | 24.2 | 25.2 | $10,584 |
| Jason Sterne | $420 | 26.2 | 1.4 | 27.6 | $11,592 |
| Justin Coretti (travel) | $140 | 2.0 | | 2.0 | $280 |
| Justin Coretti | $280 | 12.2 | 0.2 | 12.4 | $3,472 |
| Nina Aasen (travel) | $210 | 6.0 | | 6.0 | $1,260 |
| Nina Aasen | $420 | 85.1 | 0.6 | 85.7 | $35,994 |
| Benjamin Kopp | $200 | | 146.13 | 146.13 | $29,226 |
| Kevin Mendillo | $280 | | 0.2 | 0.2 | $56 |
| Jaclyn Kaplan (serve process) | $90 | | 1.0 | 1.0 | $90 |
| Shobna Cuddy | $100 | 1.6 | 4.6 | 6.2 | $620 |
| Sarah Woodard | $100 | 2.4 | | 2.4 | $240 |
| Allison Bunnell | $100 | 32.1 | 7.2 | 39.3 | $3,930 |
| Amanda Pinchak | $100 | 3.6 | | 3.6 | $360 |
| Diana Gagliostro | $125 | 0.2 | | 0.2 | $25 |
| Rebecca Mills | $100 | 3.7 | | 3.7 | $370 |
| Alysson Green | $100 | | 4.7 | 4.7 | $470 |
| Burhan Meghezzi (legal assistant) | $100 | | 0.7 | 0.7 | $70 |
| Cailin O'Donnell | $100 | | 3.7 | 3.7 | $370 |
| John Slaski (legal assistant) | $100 | | 0.2 | 0.2 | $20 |
| | | | | **TOTAL** | **$99,029** |

**B.    Costs**

CLF seeks $1,814.79 in reimbursement for costs incurred during the administrative component of this case.  Dkt. No. 47 ¶ 7.  Specifically, CLF asks for costs of copying ($173.50, billed at $0.50/page), postage ($2.13), tolls ($29.50), overnight fees for lodging and meals ($1,000, billed at $200/night), parking ($95), and mileage ($514.66).  *Id.*  For the federal

component, CLF seeks $419 in cost reimbursement.  Dkt. No. 47 ¶ 7.  This includes costs of

copying ($19.00, billed at $0.50/page) and a filing fee ($400).

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See*

20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S.

291, 297-98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set

out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C. v. N.Y.C.

Dep't of Educ.*, 2021 WL 2471195, at *11 (S.D.N.Y. June 17, 2021) ("A district court may

award reasonable costs to the prevailing party in IDEA cases.") (quoting *C.D.*, 2018 WL

3769972, at *12); *S.J.*, 2021 WL 100501, at *5 (stating the same).

### 1.  Costs for the Administrative Hearing

Defendant challenges the rate of fifty cents per page for which Plaintiff seeks to recover

costs for copying, 70% of the out-of-district, non-lodging travel expenses, and 100% of the

lodging expenses at the administrative stage.  Dkt. No. 40 ¶¶ 38, 55.

Expenses of printing and copying are generally compensable.  *See Duke v. Cnty. of

Nassau*, 2003 WL 23315463, at *6 (E.D.N.Y. Apr. 14, 2003) ("Courts have continuously

recognized right to reimbursement of costs such as photocopying, postage, transcript fees and

filing fees.").  The majority of courts in this District limit copying costs to ten cents per page.

*See S.J.*, 2021 WL 100501, at *5 (citing *Febus v. Guardian First Funding Grp., LLC*, 870 F.

Supp. 2d 337, 341 (S.D.N.Y. 2012)); *see also H.C.*, 2021 WL 2471195, at *11 ("District courts

in New York 'routinely reduce [ ] requests for photocopying reimbursement to 10-15 cents per

page.'" (quoting *Febus*, 870 F. Supp. 2d at 341)).  This figure appears to go as far back as 1997

in this District.[11]  *See Gen. Elec. Co. v. Compagnie Euralair, S.A.* ("GE's counsel charged 10¢

---

[11] Indeed, outside this District, it may go back as far as 1992.  *See In re Towers Fin. Corp.
Noteholders Litig.*, 1997 WL 5904, at *2 (S.D.N.Y. Jan. 8, 1997) (citing *Spicer v. Chicago Bd.*

per page, which is appropriate"); *In re Towers Fin. Corp. Noteholders Litig.*, 1997 WL 5904, at

*2 (S.D.N.Y. Jan. 8, 1997) (awarding costs at 10 cents per page because "[c]ounsel's

submissions . . . show that where outside copying services were used, the cost was around 10c

per copy"); *see also In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 238 (1st Cir.

1997) (awarding costs at 10 cents per page).  For decades, courts have adopted that figure,

frequently citing no other support than that it has been deemed reasonable before.  *See, e.g.*, *King

Vision Pay-Per-View, Ltd. v. Tardes Calenas Moscoro, Inc.*, 2004 WL 473306, at *5 (S.D.N.Y.

Mar. 12, 2004) (citing *General Electric Co.* and *In re San Juan Dupont Plaza Hotel Fire* for

proposition that ten cents per page is reasonable commercial rate and reducing rates for in-house

copying to ten cents per page); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 216

(E.D.N.Y. 2006) (citing *King Vision Pay-Per-View* and awarding photocopying costs at ten cents

per page rather than twenty cents per page on theory that the lower rate "is more consistent with

a reasonable commercial rate").

     The ten-cent figure is not a hard-and-fast number, never to be departed from.  Recently, a

court in this District awarded copying costs at a rate of fifteen cents per copy.  *See G.T.*, 2020

WL 1516403, at *8.  In 2001, Judge Stein of this District awarded copying costs at a rate of 12.5

cents per page under a fee-shifting civil rights statute, *Anderson v. City of New York*, 132 F.

Supp. 2d 239, 246 (S.D.N.Y. 2001); thirteen years later, in 2014, he awarded copying costs at a

rate of fifteen cents per page.  *Hernandez v. Goord*, 2014 WL 4058662, at *15 (S.D.N.Y. Aug.

14, 2014).  In another case, in the Northern District of New York, Judge Sannes found copying

costs of 25 cents per page to be reasonable in the context of calculating a bill of costs.  *Green v.*

---

*Options Exch., Inc.*, 844 F. Supp. 1226, 1260 (N.D. Ill. 1993) for the proposition that $.10 per
page is a reasonable rate because it is the rate charged at "local copy shops").

*Venettozzi*, 2019 WL 4508927, at *2 (N.D.N.Y. Sept. 19, 2019).

Plaintiff's support for the rate of 50 cents per page is Exhibit D to the Cuddy Declaration. Dkt. No. 35-4. That exhibit contains pages from the website of the New York Public Library that the self-service fees per page for black-and-white copying is twenty cents and for staff-assisted black-and-white photocopies is fifty cents, and that the fee schedule for copying by the Clerk of Court of the Southern District of New York is fifty cents per page. The fee schedule for the Second Circuit is fifty cents per page for reproduction of documents in paper form, while the costs for copying of briefs and appendices under Federal Rule of Appellate Procedure 39 is fixed at twenty cents per page. Plaintiff's citation to the rates charged by the New York Public Library and the clerks of the Southern District of New York and the Second Circuit is not persuasive. The case law refers to the rates charged by a "commercial vendor." *Febus*, 879 F. Supp. 2d at 341. The New York Public Library and the court system, both of which have primary obligations other than the copying of papers, are not commercial vendors. The citation to the FRAP 39 rate in the Second Circuit is more persuasive. FRAP 39(c) implements 28 U.S.C. § 1920, the general statute governing taxation of costs in federal court, including the costs of making copies. In *Arlington Central School District Board of Education v. Murphy*, the Supreme Court held that Section 1415(i)(3)(B) was intended to "ad[d] reasonable attorney's fees incurred by prevailing parents to the list of costs that prevailing parents are otherwise entitled to recover" pursuant to Section 1920. 548 U.S. 291, 297 (2006). Under Rule 39(c), the costs of copies must be fixed at a rate that "must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying." Fed. R. App. P. 39(c). If the Second Circuit has determined that a rate of 20 cents per page does not exceed that generally charged for such work in the area, that includes areas where costs

generally tend to be lower than in the Southern District of New York.  And if the prevailing party

in the Second Circuit was entitled to allowable costs from the losing party at that rate, it follows

that—at least absent evidence to the contrary—an attorney in an IDEA case in the Southern

District of New York (where costs tend to be higher) who prevails should be entitled to

reimbursement at a rate no lower than twenty cents per page.  The Court finds that twenty cents

per page is a reasonable figure for copying costs and will award costs at that rate.

Defendants' arguments with respect to the subpoenas at the federal level appear to be

based on a mistake of fact.  Those costs will be allowed.

"A prevailing party in IDEA litigation is entitled to recover for costs incurred during

reasonable travel."  *C.D.*, 2018 WL 3769972, at *13.  In *C.D.*, Judge Engelmayer determined:

> For the reasons discussed above in connection with the billing of travel time, it is
> not reasonable to shift most of the Cuddy Law Firm's travel costs to [defendant].
> Having determined that only a one-hour—rather than three and a quarter-hour—
> trip to the site of the IDEA administrative proceedings is properly compensable, the
> Court will make a proportionate reduction in mileage costs, which appear largely
> to have been incurred traveling to and from the Cuddy Law Firm's offices (or the
> lawyers' homes) and the hearings . . . . The Court will thus reduce the requested
> mileage costs by 70%, from $1,721.54 for the administrative phase of the litigation
> to $516.46.

*Id.*  For similar reasons, the court reduced the costs awarded for meals by 70%.  *Id.*  Finally, the

court awarded no costs for lodging, because "[a]n attorney who was sited within a reasonable

distance of the hearing location could commute daily to the hearings, obviating any need for

lodging."  *Id.*; *cf. S.J. v. New York City Dep't of Educ.*, 2020 WL 6151112, at *7 (S.D.N.Y. Oct.

20, 2020) (citing *C.D.*, 2018 WL 3769972, at *13 for the proposition that "[t]he Court declines to

award the Cuddy Law Firm lodging expenses.  Similarly, Plaintiff's counsel's other out-of-

district travel-related expenses, including mileage, tolls and parking, are not

compensable."), *report and recommendation adopted as modified*, 2021 WL 100501 (S.D.N.Y.

Jan. 12, 2021), *modified*, 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021) (modifying on other grounds).

The Court agrees with the reduction of 70% of the non-lodging travel expenses and with the elimination of all lodging costs with respect to the administrative stage.  Plaintiff argues that the expenses for "meals, tolls, mileage, and parking are all reasonable expenses" because "[a]ttorneys throughout the Southern District of New York would have still gone to Brooklyn for the hearing dates (all scheduled around meal times), requiring these expenses," and "M.H. was *pro se*, in need of quick and reputable representation that she did not find in the Southern District of New York, and relied upon a close friend who referred her to Cuddy Law Firm."  Dkt. No. 45 ¶¶ 107-108.  However, attorneys in Manhattan who would have gone to Brooklyn would have incurred the travel costs of perhaps a subway token.  The fact that it was convenient for M.H. to hire CLF does not qualify its travel expenses as "reasonable."  On that logic, counsel from throughout the country would be able to obtain New York rates and be reimbursed for travel expenses, while at the same time bearing the lower overhead of the regions in which they are located and sticking the losing Defendants with a higher overall bill for fees and costs.  The Court doubts that Congress had that result in mind when it authorized reasonable attorneys' fees. *See K.F.*, 2011 WL 3586142, at *6 (denying expenses ancillary to CLF attorneys' travel from Auburn or Ithaca, NY to Brooklyn, including for hotel, tolls, parking and mileage); *C.D.*, 2018 WL 3769972, at *13 (awarding $920.40 for mileage and meals where $3,068.01 was sought and denying entirely $3,745.76 billed for lodging); *see also S.J.*, 2020 WL 6151112, at *7 (holding out-of-district travel expenses not compensable), *modified on other grounds*, 2021 WL 100501. A reasonable client "would not agree to pay in-district attorney rates while also paying for extensive lodging expenses necessitated by out-of-district attorneys' travel."  *C.D.*, 2018 WL

3769972, at \*13.  By the same logic, it would not agree to pay for that component of non-lodging travel expenses incurred because counsel hails from Auburn or Ithaca rather than from some nearer locale.

The Court follows *C.D.* and *S.J.* in declining to award overnight expenses, for the reasons stated above.  Accordingly, the appropriate award of travel-related costs for the administrative component is $191.75.

### 2.      Costs of the Federal Hearing

The copying fee is reduced to $7.60 for the reasons stated above (applying a $0.20 per page going rate).  Filing fees are generally recoverable.  *See Duke*, 2003 WL 23315463, at \*6 ("Courts have continuously recognized right to reimbursement of costs such as . . . filing fees."); *see also Malibu Media, LLC v. Rios*, 2021 WL 707274, at \*4 (S.D.N.Y. Feb. 23, 2021) (taking judicial notice of a $400 filing fee and awarding it in costs), *report and recommendation adopted*, 2021 WL 942737 (S.D.N.Y. Mar. 11, 2021); *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 279 (E.D.N.Y. 2010) ("Court filing fees are recoverable litigation costs.").  Because Defendant does not object to reimbursement for the filing fee, *see* Dkt. No. 43 at 23, the Court awards it in full.

Summing the total costs, the Court finds that Plaintiff is awarded.  The table below summarizes the calculations:

| Item | Cost |
|---|---|
| Copying Costs (administrative proceeding) | $69.40 |
| Toll | $8.85 |
| Mileage | $154.40 |
| Parking | $28.50 |
| Postage | $2.13 |
| Copying Costs (federal proceeding) | $7.60 |
| Filing Fee | $400 |
| **TOTAL** | **$670.88** |

C.     Prejudgement Interest

Plaintiffs request that the Court award prejudgment interest on its requested attorneys'

fees.  It claims that "it may even be an abuse of discretion *not to include* prejudgment interest in

areas where, as here, a defendant essentially has an interest-free loan for as long as it can put off

reaching a Court's judgment."  Dkt. No. 48 at 12.

The law is unsettled in the Second Circuit on whether a court may add prejudgment

interest to an attorneys' fee award.  *See S.J.*, 2021 WL 100501, at *5 (noting that Plaintiff "failed

to cite any IDEA case in this Circuit where prejudgment interest was awarded" and thus "did not

adequately support the legal basis for the Court to award prejudgment interest for an award of

attorneys' fees pursuant to IDEA").  Judge Abrams recently granted CLF prejudgment interest,

albeit without discussion.  *J.R. v. N.Y. City Dep't of Educ.*, 2021 WL 3406370, at *6 (S.D.N.Y.

Aug. 4, 2021).  In *S.J.*, Judge Schofield denied Plaintiff's request for prejudgment interest after

assuming that she had discretion to make such an award, again without discussion.  2021 WL

100501, at *5.  The District of Connecticut has held that the court has "broad discretion' to grant

prejudgment interest based on 'considerations of fairness," while at the same time denying an

award of prejudgment interest.  *P.J. v. Connecticut*, 2016 WL 9753761 at *22 (D. Conn. Mar.

31, 2016) (internal quotation marks omitted) (quoting *S.E.C. v. Contorinis*, 743 F.3d 296,

307-308 (2d Cir. 2014) (internal citations omitted)).[12]

Outside the Circuit, the courts are divided on the availability of prejudgment interest on

an attorneys' fee award in an IDEA case.  *See, e.g.*, *Knox ex rel. J.D. v. St. Louis City Sch. Dist.*,

---

[12] *Contorinis* addressed prejudgment interest on disgorgement paid to the SEC and does not
address the question here on whether prejudgment interest can be awarded on costs under the
IDEA.

2020 WL 3542286, at *15 n.26 (E.D. Mo. June 30, 2020) ("The Eighth Circuit has not

determined whether prejudgment interest for attorney fees is available under the IDEA and, as

other districts have noted, this remains an 'open question.'" (citing *T.B. v. San Diego Unified

Sch. Dist.*, 293 F.Supp. 3d 1177, 1207 (S.D. Cal. 2018); then citing *McAllister v. District of

Columbia*, 160 F. Supp. 3d 273, 277 n.1 (D. D.C. 2016))); *D.D.M. ex rel. O.M.S. v. Sch. City of

Hammond*, 2020 WL 6826490, at *11 (N.D. Ind. Nov. 19, 2020)  ("Many district courts have

applied prejudgment interest to attorneys' fees under the IDEA" (citing *K.S. v. Bd. of Educ. of

Vandalia Cmty. Unit Sch. Dist. No. 203*, 2018 WL 3993628, at *18 (S.D. Ill. Aug. 21, 2018)

(collecting cases)); *Brianna O. v. Bd. of Educ. of City of Chicago, Dist. 299*, 2010 WL 4628749,

at *13 (N.D. Ill. Nov. 8, 2010) (awarding prejudgment interest on the attorneys' fees for the

underlying hearing); *Troy Sch. Dist. v. Janice*, 2016 WL 1178260 (E.D. Mich. Mar. 28, 2016)

(awarding prejudgment interest on attorneys' fees); *Christopher C. v Bd. of Educ. of City of Chi.*,

2010 WL 3420266, at *4 (N.D. Ill. Aug. 26, 2010) ("The Seventh Circuit has not addressed the

propriety of awarding prejudgment interest for fee awards under the IDEA, but other district

courts have awarded interest in such cases") (citing cases); *Kaseman v. Dist. of Columbia*, 329 F.

Supp. 2d 20, 28 (D.D.C. July 7, 2004) (awarding prejudgment interest where as a result of

defendant's refusal to reasonable settlement on plaintiffs' attorneys' fees requests, plaintiff's

counsel had to "struggle, in some instances for longer than two and a half years to obtain

payment for her services").

  The most extended appellate discussion of the issue is that of the Eleventh Circuit in

*Williams ex rel. Williams v. Fulton Cnty. Sch. Dist.*, 717 F. App'x 913, 918 (11th Cir. 2017).

There, the Eleventh Circuit affirmed a district court order declining to award prejudgment

interest on an award of attorneys' fees.  Although the appellate court framed its decision in the

language of discretion, its analysis suggested that the district court was without power to add prejudgment interest to an attorney fee award.  The Eleventh Circuit noted that the statutory language of the IDEA allowed the court to award reasonable attorneys' fees "as part of the costs," 20 U.S.C. § 1415(i)(3)(B)(i), and that the Supreme Court had stated in *Library of Congress v. Shaw*, 478 U.S. 310, 321 (1986) that the term "costs" has "never been understood to include any interest component."  In that same case, the Supreme Court also stated that a court could not award a delay premium against the Federal Government.  *Id.* at 322.

To the extent that the Eleventh Circuit meant that a district court lacks authority to adjust an attorneys' fee award to account for delay, this Court respectfully disagrees.  In its reliance on *Shaw,* the Eleventh Circuit *Williams* decision fails to take into account two salient developments that followed *Shaw*.  First, three years after *Shaw*, the Supreme Court held that in interpreting an analogous fee-shifting statute, "an enhancement for delay in payment is, where appropriate, part of a 'reasonable attorney's fee'" and that "an appropriate adjustment for delay in payment— whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute."  *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 282, 284 (1989). Quoting its prior decision in *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987), the Supreme Court reasoned "[w]hen plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later. . . . Meanwhile, their expenses of doing business continue and must be met.  In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  491 U.S. at 282.

In the wake of *Jenkins*, the Second Circuit has held that in awarding a reasonable attorneys

fee "to 'adjust[] for delay,' the 'rates used by the court should be current rather than historic hourly rates.'" *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (quoting *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal citations and quotations omitted)); *see also Lawton v. Success Academy of Fort Greene*, 2021 WL 1394372, at *9 (E.D.N.Y. Jan. 3, 2021) ("The Second Circuit does indeed require courts to award fees at current rates, 'because compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed.'" (quoting *Ravina v. Columbia Univ.*, 2020 WL 1080780, at *7 (S.D.N.Y. Mar. 6, 2020)) (internal citations and quotations omitted)); *Lexjac, LLC v. Board of Trustees of the Incorporated Village of Muttontown*, 2015 WL 13001537, at *7 (E.D.N.Y. Mar. 10, 2015) ("[T]he fee application must be determined using current Eastern District rates.").

Second, in the immediate aftermath of *Shaw*, Congress passed Section 114(e), which provided that "the same interest to compensate for delay in payment shall be available in cases involving nonpublic parties." 42 U.S.C. § 2000e-16(d); *see also Brown v. Secretary of Army*, 78 F.3d 645, 647 (D.C. Cir. 1996). The transparent intent, and the subsequent effect, of Section 114(e) was to restore to the law of fee-shifting the rule applicable to fee awards prior to *Shaw* that, in appropriate circumstances, the court may make an adjustments to an award to account for delay. *See Shaw*, 478 U.S. at 324 & n.2 (Brennan, J., dissenting) (noting that "in appropriate circumstances, §706(k) permits the award of prejudgment interest (or a delay adjustment) on attorneys' fees awarded against losing parties other than the Federal Government" and citing cases); *see also Thorsen v. Cnty of Nassau*, 2011 WL 1004862, at *5 (E.D.N.Y. Mar. 17, 2011) (awarding delay adjustment following *Lochren* and *Jenkins*). In the wake of the passage of

Section 114(e), the courts continued to award delay notwithstanding the language of Title VII that a reasonable attorney's fee was part of costs.  *See, e.g.*, *Raniola v. Bratton*, 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003).  Since the IDEA fee-shifting provision must be interpreted *in pari materia* with other fee-shifting statutes, it follows that the reference to fees being part of "costs" does not prevent a court from adjusting the appropriate rates to take delay into account.

The Court thus concludes that in IDEA cases, as in other fee-shifting contexts, the Court should take into account "delay" by using current rates in calculating a "reasonable" attorneys' fee.  This result is consistent with the purpose of the fee-shifting provision.  The law is intended to ensure that attorneys handle special education cases by assuring counsel reasonable fees if they prevail.  *Fox*, 563 U.S. at 833.  It would defeat that purpose if a recalcitrant defendant could reduce the real value of counsel's fees by protracting negotiations over fees and thereby delaying payment.  This result is also consistent with the language of the fee-shifting provision that makes reasonable attorneys' fees part of costs.  In this case, for example, during settlement discussions, Defendant prolonged the proceedings by refusing to indicate to Plaintiff the line entries that it believed were overbilled, claiming it had a practice not to "go line-by-line on the entries that [it] believe[d] [we]re overbilled in advance of motion practice."  Dkt. No. 32, Ex. Q at 1-2.

Finally, the Court's result is consistent with the holding of *A. v. Hartford Bd. of Educ.*, 2017 WL 1967498, at *4 (D. Conn. May 11, 2017), in which after stating that the court has discretion to allow prejudgment interest on a fee award under the IDEA, the court declined to exercise that discretion because it had already awarded plaintiff's attorney his current hourly rate.

Plaintiff's counsel protests that this approach does not compensate them for the lost time value of money in a case such as this in which, as they argue, the rates at the time they rendered the services remain their current rates.  Hr'g Tr. 21.  That complaint has some force.  The use of current rates is, at best, an imperfect proxy for the loss to counsel from a delay in payment.  It will undercompensate counsel when interest rates exceed the rate of inflation of attorneys' fees, just as it will overcompensate counsel when the inflation rate exceeds the interest rate.  If the use of current rates, however, is imperfect, the imperfection lies with the test the Circuit has mandated and not with its application here.  The law and the Supreme Court's interpretation of "costs" does not permit this Court to mix and match, giving counsel current rates when that would generate a greater fee award and prejudgment interest on historic rates when that would generate the greater fee.  The request for prejudgment interest is denied.

### D.     Post-Judgment Interest

Plaintiff's request for post-judgment interest is granted.  "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'"  *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (alteration in original) (quoting *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996)); *see also S.J*, 2021 WL 100501, at *5 (Schofield, J.) (stating the same).

### E.     Conclusion

Plaintiff is awarded the total fee award ($99,029) and the total cost award ($670.88) for a sum total of $99,699.88.

## II.    Enforcement of the FOFD

Defendant moves for summary judgment on Plaintiff's claims for equitable relief, asking the Court to order Defendant to comply with all the terms of the FOFD.  *See* Dkt. No. 43 at 31.

Defendant does not dispute that the Court has the authority to issue an order to enforce the terms of a FOFD awarding services pursuant to 42 U.S.C. § 1983. *Id.* at 24 (citing *Rutherford v Fla. Union Free Sch. Dist.*, 2019 WL 1437823, at *33 (S.D.N.Y. Mar. 29, 2019) (noting authority under 42 U.S.C. §1983)); *A. v. Hartford Bd. of Educ.*, 2016 WL 3950079, at *32 (D. Conn. Jul. 19, 2016) (same).[13] The Court has "subject matter jurisdiction to enforce favorable administrative decisions rendered under the provisions of the IDEA." *Rutherford*, 2019 WL 1437823, at *25 (quoting *A.T. v. N.Y. State Educ. Dep't*, 1998 L 765371, at *7, 9-10 & n.16 (E.D.N.Y. Aug. 4, 1998)). "With respect to Plaintiff['s] allegations of non-compliance, this Court has subject matter jurisdiction under § 1983 to enforce favorable administrative decisions rendered under the provisions of the IDEA." *Id.* at *25; *see also Y.S. ex rel. Y.F. v. N.Y. City Dep't of Educ.*, 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) (enjoining Department to comply with IHO order); *Blazejewski ex rel. Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*, 560 F. Supp. 701 (W.D.N.Y. 1983) (ordering injunctive relief requiring implementation of decision of New York State Education Department).[14]

Defendant argues that Plaintiff has not identified any facts suggesting it has failed to comply with the FOFD and therefore it is entitled to summary judgment. Plaintiff's amended complaint, filed on July 27, 2020, alleged that Defendant had not paid for all of the compensatory ABA services awarded in the FOFD; Defendant and the CSE had failed to develop an IEP mandating ABA methodology with discrete trials specified; Defendant, its CSE, and its

---

[13] Defendant does argue that the Court does not have authority to enforce the FOFD under the IDEA itself as alleged in Count Three. *Id.* at 31.

[14] The Second Circuit has assumed that the IDEA's exhaustion requirement do not apply to allegations that a school has failed to implement services that were specified or otherwise clearly stated in an IEP. *Levine v. Greece Central Sch. Dist.*, 353 F. App'x 461 (2d Cir. 2009); *see also Calandrino ex rel. J.C. v. Farmingdale Union Free Sch. Dist.*, 2019 WL 7473457, at *3 (E.D.N.Y. Dec. 18, 2019) (same).

IHOIU had failed to mandate and provide ten hours of home-based ABA services "at the provider's prevailing rate," as ordered by the FOFD; Defendant had failed to fund occupational therapy (4x45) in a sensory gym with M.H.'s chosen provider, which was ordered to begin on July 1, 2018 and continue through the end of the 2018-2019 school year; and Defendant and the IHOIU had failed to fund the equivalent number of hours/minutes of OT in a sensory gym with M.H.'s chosen provider, that would have been provided had the DOE implemented the FOFD. Dkt. No. 14 ¶¶ 36-40.  Those claims formed the basis for Plaintiff's claim for equitable relief.

Defendant has demonstrated that it has complied with the FOFD.  Plaintiff has not identified a genuine issue of material fact.  Therefore, Defendant is entitled to summary judgment.

Defendant has paid for all of the compensatory ABA services awarded in the FOFD. Hr'g Tr. 9.  The IEPs conform to the relief awarded by the IHO.  Although Defendant did not pay all of the outstanding invoices until after this litigation was instituted, it is undisputed that the invoices to date have been paid.  *Id.*  Plaintiff's complaint is limited to the assertion that Defendant has "neglected its duties to maintain any appropriate bookkeeping method on M.T.'s case to determine what has actually been paid, as opposed to what may still be processing or what may be a technical error," Dkt. No. 34 at 24, but Plaintiff cites no authority for the right to compel the Department to have "appropriate bookkeeping."  Defendant is not liable for the failure to include ABA in M.T.'s IEP.  Although Plaintiff argues that the specification of ABA within the four corners of the IEP would have value for M.T., the FOFD ordered only that the CSE "develop a new IEP . . . that places the Student in a state-approved non-public school with . . . ABA methodology with discrete trials specified."  *Id.* ¶¶ 27-34.  It is undisputed that the IEPs issued after the FOFD did so—they placed M.T. at BBF, a non-public school that provides the

ABA services the FOFD ordered Defendant to include in the IEP.  Counter Rule 56.1 statement ¶ 121.  The FOFD did not order the CSE to develop an IEP specifying home-based ABA. Plaintiff had complained that the Department failed to pay for the home-based ABA at the provider's prevailing rate, but it is undisputed that there are no outstanding invoices.  Plaintiff complains that Defendant has no excuse for its delay in paying the $4,592.22 in pre-FOFD ABA hours, Dkt. No. 34, at 18, but those too have been paid.  Finally, while the Department has not yet funded OT, that is because it is undisputed that M.H. has not identified a provider for OT. The FOFD does not require the Department to identify and pay an OT provider.  It requires the Department to "fund OT 4x45 in a sensory gym with the Parent's chosen provider."  *Id.* ¶ 34.[15]

Plaintiff argues that there were two months from January of 2019 until February 2021 (September and November 2020) when there were no ABA services and suggests that it might have been because the provider was not being paid, but there is no evidence in the record to support that proposition.  Tr. 24.  Moreover, although Proud Moments unilaterally stopped providing ABA services after February 2021, the Department is not responsible for that decision either.  As Defendant's declarations establish, "there are ample remaining hours available to M.T. for her to use for ABA."  Dkt. No. 44 at 1.

Because there is no record showing that Plaintiff has used her own funds for the ABA services that the Defendant was ordered to provide in the FOFD, because Plaintiff has not shown that Defendant was responsible for M.T. not receiving the ABA services in the few months when

---

[15] Plaintiff also claims that with respect to parent counseling and training services (PCAT), Defendant has not confirmed whether or not it authorized Attentive Behavior to submit invoices for PCAT services and that until it does so, Defendant can delay Plaintiff's use of those hours. Dkt. No. 32 ¶ 232.  But, the Department has confirmed that each of the 62 hours awarded remain outstanding and that it "stand[s] ready, willing, and able to pay the 62 hours" at the providers' prevailing rate once M.H. has chosen a provider.  Hr'g Tr. 27; Dkt. No. 51 at 6.

she did not receive them, and because Defendant has indicated it "stands ready, willing and able to pay for the remaining ABA, and all of the awarded PCAT and OT services, upon the submission of invoices," Dkt. No. 51 at 7, there is no legal or equitable basis for the establishment of an escrow account for unused services. *Cf. Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010) (ordering escrow in order to effectuate court order awarding plaintiff two years of compensatory reading education where Department failed to comply with judgment of review officer under IDEA).

Plaintiff's second and third causes of action for equitable relief are dismissed.

## CONCLUSION

Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's cross motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. Nos. 30 and 39.  Plaintiff is directed to prepare a proposed judgment consistent with this opinion after meeting and conferring with Defendant.

SO ORDERED.

Dated: October 13, 2021
New York, New York

_____
LEWIS J. LIMAN
United States District Judge